Edwards v. Hartshorn.

,W. C. EDWARDS V. J. A. HARTSHORN.

No. 14,258. (82 Pac. 520.)

SYLLABUS BY THE COURT.

1. PRACTICE, DISTRICT COURT—*Pleading*—*One Cause of Action* —*Counts.* A party cannot always anticipate what the testimony in a case may develop, and to meet the possible phases of the evidence he may sometimes state his cause of action in different counts.

2. ——— *Election of Counts.* Where a plaintiff set up in his petition three counts based on the same transaction, and at the close of the testimony elected to stand on one of the counts, and the case was submitted to the jury as a single cause of action, the refusal of the court to require an earlier election was not prejudicial error.

3. CONTRACTS—*Provision for an Umpire Valid*—*Effect.* A provision in a contract between a principal contractor and a subcontractor for the grading of a railroad that the work should be done under the supervision of the chief engineer of the former, who should make estimates as a basis for the payment of the work done, and that his decision as to all matters of dispute which arose between the parties should be final and conclusive, is valid; and the decision of such an umpire is *prima facie* conclusive upon all matters submitted to, and fairly and honestly decided by, him.

4. ——— *Fraud or Mistake of Umpire.* If there be fraud or

mistake so great and palpable as to imply bad faith, or the umpire fail fairly and honestly to perform the function assigned to him, his decision will have no binding force.

5. ——— *Subsequent Agreement.* Nor will it bind if, by the subsequent agreement of the parties, the decision is not to be relied on, but other, fuller and correct estimates are to be made.

6. ——— *Remedy on the Contract.* In either case a proceeding in equity to set aside the decision of the engineer is not a condition precedent to an action at law to recover the money due under the contract, where the work has been satisfactorily completed by the plaintiff and has been accepted by the defendant.

7. ——— *Interest of Umpire.* The fact that the chosen umpire was an employee of the defendant does not of itself weaken the force of his decision, but the law requires of a person so situated the utmost diligence and good faith in the performance of his duties.

Error from Harper district court; PRESTON B. GIL-LETT, judge. Opinion filed October 7, 1905. Affirmed.

*John A. Eaton,* and *Fred Washbon,* for plaintiff in error.

*T. A. Noftzger,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action brought by J. A. Hartshorn against W. C. Edwards to recover the balance alleged to be due for the grading of two miles of the Kansas City, Mexico & Orient railroad, in Oklahoma. Originally the Kaw Valley Construction Company, the Union Construction Company and the Kansas City, Mexico & Orient Railroad Company were made defendants, but on the motion of plaintiff a dismissal was entered as to these parties, and the case was tried out against Edwards alone.

The petition contained three counts, all based upon Hartshorn's claim for work done for the defendant. The first was upon an account stating the charges for clearing, grubbing and excavating for the grade of the

Edwards v. Hartshorn.

railroad, and also stating the credits, and asking for recovery of the balance due, $5439.16. The second count set up the contract between the parties, the work done in pursuance of it, the failure to measure and estimate the work as the contract specified, and otherwise to perform the contract; and the third count was like unto the second, except that express malice and intentional fraud were charged against some of the engineers in measuring the excavation and determining the amount due for the work. Hartshorn, however, elected to stand upon the second count of his petition, and the averments of the other counts became immaterial.

In the second count the contract between the parties was set forth, under which Hartshorn was to receive fifteen dollars per acre for clearing, twenty-five dollars per acre for grubbing, nine cents per cubic yard for earth excavation, twenty-seven and one-half cents per cubic yard for loose rock, and fifty-five cents per cubic yard for solid rock. The work was to be done to the satisfaction of the chief engineer of Edwards, who was to make measurements and estimates, and was to be paid for when he certified that the work was completely performed.

The petition alleged that the contract contained a provision "that the decision of the chief engineer of the defendant, W. C. Edwards, should be final and conclusive on any dispute which might arise between the parties to said agreement relative to or touching the same, and that each of said parties did thereby waive any right of action or other remedy, in law or otherwise, by virtue of this contract, so that the decision of the chief engineer should, in the nature of an award, be final and conclusive on the rights and claims of said parties, and no suit should be brought until the award of the said chief engineer should have been made and published, and then for the purpose only of enforcing said award." It was further alleged that Edwards was the agent of the construction and railroad companies; that he chose as chief engineer M. P. Paret, who was

the chief engineer of these companies, and who was interested in estimating the work done at a lower figure than the correct amount; that Paret, pretending to act as chief engineer for Edwards, made certificates of the work done, but failed and neglected personally to measure and estimate the work done; that, instead of making estimates or measurements of the work personally, he relied upon measurements and classifications made by E. B. Coulson, who was commonly known as a resident engineer; that Coulson was wholly incompetent for the work; that the estimates made by him were erroneous, incorrect, and incomplete; and that neither Paret nor Coulson had ever made any correct estimate, but made one which placed the value of the work done at the sum of $5439.16 less than the true amount and value under the terms of the contract.

It was further alleged that two final estimates were made on the work, one for each of the miles graded, but each time Hartshorn refused to receive the sum allowed on these pretended estimates, asserting that they were incorrect, and that a mistake had been made in the classification and measurement of the work; that it was then agreed between him and Edwards that the chief engineer should make a personal examination, and upon this agreement the amounts of the estimates were accepted; that the plaintiff refused to accept said sums, or either of them, until Edwards agreed to make full, correct and final estimates and classifications, and finally accepted the money only as part payment of the work under an agreement that correct estimates and classifications should be made, but that the defendant had since unreasonably and fraudulently refused and neglected to make further, final and correct estimates and classifications. It was further alleged that the work done had been accepted as being in full compliance with the contract, but the defendant, on account of the mistake of the chief engineer, and the fact that Coulson was careless, negligent, and incompetent, and failed correctly to measure,

estimate and classify the work done under the contract, had failed to pay him the amount due under the terms of the contract, and that there was still due $5439.16, for which plaintiff asked judgment.

In his answer Edwards alleged that the chief engineer did make estimates and classifications of the work done, and that he had paid to Hartshorn the amount of the estimates which were received by the plaintiff. The plaintiff in reply alleged that the estimates mentioned in the answer were those described in the petition as being incorrect, false, and fraudulent. The trial resulted in favor of the plaintiff, the jury awarding him the sum of $5439.16.

Error is assigned on the ruling of the court denying the motion of Edwards to require the plaintiff to elect on which count of his petition he would rely. The code requires that the petition shall contain a statement of the facts constituting the cause of action, in ordinary and concise language, and without repetition. (Code, § 87; Gen. Stat. 1901, § 4521.) A party may, however, have demands of a different nature founded on the same transaction, which he may state in separate counts, although only one recovery can be had. There are times when a party cannot well anticipate what the testimony will develop, and to meet any possible phase of the evidence he may state his cause of action in different counts. (Bliss, Code Pl., 3d ed., § 120; 5 Encyc. Pl. & Pr. 321.) Whether such a practice was permissible in this instance is of little consequence. At the close of the testimony the plaintiff did elect to rely on the second count of his petition and the case was submitted to the jury as involving but a single cause of action, and hence the defendant did not suffer any prejudice.

It is contended that the facts stated in the second count do not constitute a cause of action. In part, this is based on the ground that the contract pleaded provided that the decision of the chief engineer should be final and conclusive upon the rights and claims of

the parties, and that, as an award or decision had been made by him, a resort to an action in court was precluded. It may be conceded that it was competent for the parties to agree that final estimates should be made by the chief engineer of the defendant and that his decision should be taken as correct and binding. Such an award or decision is *prima facie* conclusive as to all matters submitted to, and fairly and honestly determined by, the chosen umpire. (*Insurance Co. v. Payne,* 57 Kan. 291, 300, 46 Pac. 315.) Of course, if there were fraud, gross mistake, or the failure to exercise an honest judgment by the umpire, his estimate or award would not be binding. (*Martinsburg & Potomac R. R. Co. v. March,* 114 U. S. 549, 5 Sup. Ct. 1035, 29 L. Ed. 255; *Chicago & Santa Fe Railroad v. Price,* 138 U. S. 185, 11 Sup. Ct. 290, 34 L. Ed. 917; *McCoy v. Able et al.,* 131 Ind. 417, 30 N. E. 528, 31 N. E. 453; *Baltimore, Ohio and Chicago Railway Company v. Scholes,* 14 Ind. App. 524, 43 N. E. 156, 56 Am. St. Rep. 307; *Norfolk, &c. R. Co. v. Mills & Fairfax,* 91 Va. 613, 22 S. E. 556.)

Passing for the time being the question whether fraud, mistake, inefficiency or bad faith was sufficiently alleged to set aside the decision of the chief engineer, there were in the petition averments that by agreement of the parties the decision of the chief engineer as made was put aside and treated as not of binding force; that, when Hartshorn protested that the final estimates were incorrect and unfairly made, Edwards then agreed that further, full, final and correct estimates and classifications should be personally made by the chief engineer, but that he had unreasonably and fraudulently refused and neglected to make such estimates and classifications. Having in effect set aside the decision of the chief engineer and agreed that another and correct one should be made, a decree of the court to cancel it was certainly unnecessary. The reasons for ignoring the discredited decision become immaterial, since the petition alleged that new

and correct estimates were to be made. The petition alleged that the work was performed by Hartshorn in conformity with the contract; that it was accepted by Edwards as complete and satisfactory; the amount due for the work when measured correctly as the contract specified was set up, and also the failure and refusal to measure and estimate the work in accordance with the agreement. This stated a cause of action at law for the recovery of money under the contract.

It is argued that the decision of the chief engineer was in the nature of an award, binding upon the parties, and that the plaintiff could not maintain an action to recover under the contract so long as the award stood. The contention is that it could only be set aside by an equitable proceeding. Against the objection of the defendant the court impaneled a jury, and the case was tried as an action at law. Since the award or decision made by the chief engineer was taken out of the case by subsequent agreement there is little room to claim that it was an action for equitable cognizance. But, treating the case upon defendant's theory, it was practically an action at law, and the court could not safely have denied the demand of either party for a jury.

By the averments of the petition, as well as the testimony offered in behalf of the plaintiff, the chief engineer did not personally classify or measure the material excavated by the plaintiff in grading the railroad. There was an attempt to do so by Coulson, the subordinate engineer. It was alleged that he was not only incompetent, but that he was careless and negligent, and therefore did not correctly measure and classify the work, so that Hartshorn was allowed but $12,691.58, when according to the contract he was entitled to $18,130.74 — a mistake or variance of $5439.16. The petition did not expressly charge intentional fraud or bad faith, but it did charge inefficiency, negligence and mistakes so great and palpable as to imply bad faith. It is true the pleading did not

state in express terms that fraud was committed by the engineers, but facts as to inefficiency, negligence and gross mistake were related which in themselves are sufficient to constitute bad faith and invalidate the estimates of the chief engineer. Little strength would have been given the pleading by adding a conclusion that the facts stated constituted bad faith. If the estimates had been fairly made they would have been binding; but when not fairly made, and there are mistakes so gross as to amount to fraud on the plaintiff's rights, the estimates and decision of the chief engineer may be ignored and a recovery of the contract price had in an action at law. Although the equitable elements of mistake and fraud may be involved, the case is essentially one at law for the recovery of money under the contract, and hence a jury was properly allowed. (*Louisville, &c., R. Co. v. Meyer* [U. S., not reported], 30 L. Ed. 689; *Williams v. The Chicago, S. F. & C. Ry. Co.,* 112 Mo. 463, 20 S. W. 631, 34 Am. St. Rep. 403; *Norfolk, &c. R. Co. v. Mills & Fairfax,* 91 Va. 613; *Graham v. Woodall,* 86 Ala. 313, 5 South. 687; *Kistler v. The Indianapolis and St. Louis Railroad Company,* 88 Ind. 460; *Canal Trustees v. Lynch,* 10 Ill. 521; *Baltimore, Ohio and Chicago Railway Company v. Scholes,* 14 Ind. App. 524.)

A somewhat general attack is made on the instructions which the court gave to the jury, but much of the complaint in this respect is answered in the determination already made. The respective theories of the parties were fairly presented to the jury. With respect to the estimates and award of the chief engineer, the court did not minimize the mistakes necessary to invalidate them. The jury were informed that the award of the chief engineer was final and conclusive in the absence of mistake or fraud, and that "while the final estimates of the chief engineer may be set aside on account of mistakes made by him in his final estimate and classifications of the work under the contract, yet I say to you that slight discrepancies in measurements

should be disregarded, and even where there are discrepancies of some magnitude you should accept the estimates of the chief engineer, unless the proof clearly shows such gross mistakes as would imply bad faith, or a failure on the part of the chief engineer to exercise an honest judgment in making his final estimates and classifications." This statement of the law was exceedingly liberal to the defendant, and he, at least, has no reason to complain of the rule applied.

Complaint is made that the court referred to the contention that the chief engineer did not personally do all of the work, but in the same connection the jury were instructed that he was not required personally to make the estimates and classifications, and could entrust the work, in part, to his subordinates and assistants. They were told, however, that "if the chief engineer entrusted the work of making up these final estimates and classifications to his subordinates and assistants, the mistakes and errors of the said subordinates and assistants became and were the mistakes and errors of the chief engineer, if he adopted them in making up his final estimates." The terms of the contract under which the classifications were to be made were fairly stated by the court, and we find nothing in any part of the charge that can be regarded as prejudicial error.

While the sufficiency of the evidence is vigorously assailed, we are unable to say that the verdict and judgment are without support. It appears that Paret, the chief engineer, gave little personal attention to the work as it progressed, and relied almost entirely upon Coulson, the resident engineer. There is testimony that Coulson had only a passing acquaintance with the work. He did not give it the attention during its progress necessary to a correct and complete estimate. Changes were made by him which indicated carelessness and a lack of definite information, and, indeed, the testimony tends to show that the classifications were not made with any care and that his

measurements were incomplete and little more than approximations. After a protest had been made against his estimates, and Edwards had agreed that other estimates should be made, the chief engineer sent two of his subordinates, who went over the work and made reports differing materially from the estimates of Coulson. Notwithstanding this, the chief engineer refused to change the estimates that Coulson had originally given him. Two engineers went over the work at the instance of the plaintiff, and, after measuring it, one of them reported that there were 17,807 yards of solid rock excavated, while Coulson's estimates only credited Hartshorn with 1392 yards. The other engineer who was a witness on behalf of plaintiff estimated that there were 16,704½ yards of solid rock excavated.

Although these witnesses did not see the work during its progress, their testimony indicates that their measurements were made with considerable care, and the jury were warranted in accepting their estimates in preference to those made by Coulson. Enough appears in the testimony to warrant the inference that the so-called final estimates were not fairly and honestly made, and the discrepancies are such as to show palpable mistakes and utter disregard of the rights of Hartshorn. The fact that the chief engineer, who was to classify, measure and make final estimates, was an employee of the defendant does not of itself weaken the force of his decision, but the law does require of persons so situated the utmost diligence and good faith; and the testimony offered in behalf of the plaintiff tends rather to show inefficiency and negligence on his part instead of fair and honest performance of duty.

The judgment of the district court is affirmed.

All the Justices concurring.