THE CITY OF ATCHISON v. J. R. RACKLIFFE et al., as Partners, etc.

No. 15,588. (96 Pac. 477.)

SYLLABUS BY THE COURT.

1. CONTRACTS—Provision for an Umpire—Conclusiveness of His Decision. A contract for the construction of a city sewer provided additional compensation for "rock excavation." It also contained a provision that the city engineer should in all cases determine the quality of all materials and decide all questions that should arise relative to the execution of the contract, and that his decisions should be final. Held, that the engineer was thereby empowered to decide whether in any particular instance the material excavated should be classified as rock for the purpose of entitling the contractors to such additional compensation, and his decision, if made in good faith, was conclusive.

2. ——— Correctness of Umpire's Decision Improperly Submitted to the Jury. Under the circumstances above stated, where the contractors sued for additional compensation upon the theory that the engineer wrongfully refused to classify as "rock" material which should have been so classified, it was error for the court to submit to the jury the question whether the engineer misconceived the terms of the contract in respect to the meaning to be given to the word "rock" and to instruct them that in such case his decision might be disregarded.

3. ——— Additional Compensation—Quantum Meruit. Under such circumstances, if the contractors were entitled to recover at all upon the theory that the engineer had acted in bad faith, they were entitled to additional compensation at the rate fixed by the contract; although the contract provided that all measurements should be made by the engineer, his wrongful refusal to measure the work in controversy could not force them to rely upon a count for the reasonable value of their services.

Error from Atchison district court; BENJAMIN F. HUDSON, judge. Opinion filed June 6, 1908. Reversed.

*W. A. Jackson,* city attorney, for plaintiff in error.

*J. L. Berry,* and *C. D. Walker,* for defendants in error.

The opinion of the court was delivered by

MASON, J.: Rackliffe & Gibson constructed a sewer for the city of Atchison under a written contract, one of the provisions of which was that for "rock excavation" they were to receive extra compensation at the rate of $2.40 per cubic yard. They were paid in full except with respect to a claim for 654 yards of rock excavation, which the city denied, contending that the material excavated was not rock, and that in any event the contract made the city engineer the judge of that question and he had so decided. They brought action for the amount in controversy, pleading in two counts, the first declaring in terms upon the contract, the second alleging that in the performance of the work they encountered strata of "rock and solid material of rock substance" which could be removed only by drilling and blasting and was therefore to be "classified . . . as rock excavation," the reasonable charge for which was $2.40 per cubic yard. They obtained judgment under the second count, upon the basis of $1.50 per cubic yard for the excavation in question, that being the rate of compensation to which the jury, in response to a special interrogatory, found they were entitled. The city prosecutes error, and the contractors file a cross-petition in error claiming that the judgment should be increased so as to allow them the full contract price of $2.40 per cubic yard.

The vital question of law involved is whether by the language of the contract the city engineer was made the judge of the character of the material excavated. The pleadings may be regarded as presenting a claim

on the part of the city that the engineer had decided that the material in question was not rock, and a contention on the part of the contractors that the engineer acted in bad faith in that regard. The defendant did not plead in so many words that the engineer had made such a decision, and the plaintiffs did not plead in set phrase that he acted in bad faith in so doing. But the petition alleged that he wrongfully, capriciously, without reason, and in collusion with the defendant, refused to measure the rock, and the answer denied this allegation and added that when the engineer was requested to make such measurement "he fully and frankly discussed with said plaintiffs the condition of said pretended rock excavation and called the attention of said plaintiffs to the fact that the same was not in any sense 'rock excavation.' "

The evidence showed a marked difference of opinion as to whether or not the material in controversy was properly to be regarded as rock. Witnesses for the defendant called it "shale," "soft shale," "sand shale," and said it was not rock, and that it could readily be handled by pick and shovel. One of the plaintiffs testified that he understood the term "rock" to mean "any hard substance that does not yield easily, being picked or shoveled or removed easily from its original position," adding:

"In classifying excavating material it is usually classified as rock and earth, and rock itself is classified as shale and sandstone or loose rock; different classification of rock itself. . . . If there were but two classifications, rock and earth, rock would cover, I should judge, quite a field; it would cover shale, sandstone—several other classifications."

The city engineer in the course of his examination said:

"I was called for the purpose of classifying or describing the material they were excavating; to determine the character of this material, whether or not it was to be measured and paid for as rock, and I

determined it should not be so classified, and so informed plaintiffs' foreman."

The court gave this instruction:

"You are instructed that sandstone and shale (shale being sometimes called soapstone) are rock; and if you find and believe from the evidence in the case that plaintiffs in the work of constructing the South Atchison sewer encountered what is designated sandstone and shale in place, that is, in their natural state or position, and in large bodies, that in the performance of their contract with defendant city, in the progress of their work under such contract, the only practicable way of excavating such sandstone and shale, in order that such work might progress expeditiously and economically, so that it might be completed within the time specified in the contract, was by drilling and blasting with powder and dynamite, owing to the nature and density of the substance, and that plaintiffs stripped the overlying earth from the surface and demanded that the city engineer measure the same, and that the city engineer wrongfully, arbitrarily, capriciously, or by reason of a misconception of the terms of the contract, refused to measure, and the defendant refused to pay for the same, and that plaintiffs nevertheless completed said sewer, and the defendant city afterwards accepted and used the same, then and in such event plaintiffs are entitled to recover from the defendant on the second count of their petition whatever amount you may believe from the evidence such excavation was reasonably worth, not exceeding $2.40 per cubic yard, for the number of yards so excavated by them."

In view of the context, the nature of the controversy, and the evidence, it is manifest that the phrase used in describing a possible ground of the engineer's decision —"by reason of a misconception of the terms of the contract"—had reference to a misconception as to what was meant by the word "rock" as used in the contract. At all events it was open to that construction, and no other form of misconception was suggested to the jury. If by the contract the engineer was in fact authorized to settle any dispute as to whether material excavated

should be classified as rock, his decision made in good faith would be final, and to permit the jury to disregard it upon the ground that he misunderstood the contract in that respect or had a wrong conception of what was meant by the word "rock" as there used would be to allow them to substitute their judgment for his upon the very matter entrusted to his determination. The instruction was therefore erroneous, if this power was actually lodged with the city engineer. The portions of the contract material for the determination of this question are as follow:

"Rock excavation will consist of rock in place. The contractor will strip off the earth overlying same, so as to expose the surface of the rock, upon which the engineer will take his levels, before the rock is excavated. . . . No extra allowance will be made for any class or condition of material excavated except for rock excavation."

"The engineer is to make all measurements, and to decide as to the amount or quality of the several kinds of work, and as to the quality of all materials. . . . To prevent all disputes and litigation, it is further agreed by the parties hereto, that the engineer shall, in all cases, determine the amount or quality of the several kinds of work which are to be paid for under this contract, and he shall decide all questions which may arise relative to the execution of this contract on the part of the contractor, and his estimates and decisions shall be final and conclusive, subject to the approval of the mayor and city council."

"Whenever the word 'engineer' is used, it shall be held to mean the city engineer, or his authorized assistant."

Standing alone, the provision that the engineer was to "decide as to the . . . quality of the several kinds of work, and as to the quality of all materials," might not be sufficient to empower him to pass upon what was to be considered rock; the word "materials" in the phrase quoted might under some circumstances be deemed to refer solely to the materials furnished by the contractors. But in view of the additional pro-

vision couched in the sweeping language "he shall decide all questions which may arise relative to the execution of this contract on the part of the contractor, and his estimates and decisions shall be final and conclusive, subject to the approval of the mayor and city council," it must be held that the determination of what material was to be classified as rock was committed to his judgment. Apart from the light shed upon the matter by the conflicting evidence, it is clear that the material excavated might grade insensibly from friable soil to solid rock. As suggested in the testimony of one of the plaintiffs, the contract might well have adopted a more detailed classification. But when the parties elected to recognize no character of formation intermediate between earth and rock they necessarily created a situation which called for an arbitrator to settle the inevitable dispute as to just where the dividing-line should be drawn. This duty was entrusted to the engineer, and his decision that the material in controversy was not rock, if made in good faith, was conclusive.

The plaintiffs rely largely upon *Williams v. The Chicago, S. F. & C. Ry. Co.*, 112 Mo. 463, 20 S. W. 631, 34 Am. St. Rep. 403, where a contract very similar to that here involved was passed upon, the authorities sustaining such contracts as agreements for arbitration being there collected. (See, also, *Mundy v. Louisville & N. R. Co.*, 67 Fed. 633, 14 C. C. A. 583, and *United States v. Gleason*, 175 U. S. 588, 602, 20 Sup. Ct. 288, 44 L. Ed. 284.) In the Missouri case it was held that the plaintiffs were entitled to show, if they could, that the engineer misconstrued the contract and for that reason had not measured the work in accordance therewith. But the question arose in a very different form from that here presented. The specifications provided:

"Loose rock shall comprise: *First,* shale of [or] soapstone lying in its original or stratified position, coarse boulders in gravel, cemented gravel, hard-pan, or any

other material requiring the use of pick or bar, or which can not be plowed with a strong ten-inch grading plow well handled, behind a good six-mule or horse team; *second,* detached rock or boulders in masses exceeding one and one-half cubic feet and less than one cubic yard.

"Solid rock shall comprise: *First,* rock in solid beds or masses in its original or stratified position; *second,* boulders or detached masses of rock exceeding one cubic yard, and all other material which in the judg- ment of the engineer can not be removed without being blasted." (Page 472.)

The contractors contended that the engineer refused to classify certain material as loose rock, although he admitted it to be hard-pan, because it could be plowed with a ten-inch grading plow behind a six-horse team. In other words, the dispute was as to the proper construction of the contract as a matter of grammar or the approved use of language—a pure question of law. The engineer interpreted the words "loose rock shall comprise . . . hard-pan, or any other material . . . which can not be plowed," to mean that hardpan should not be regarded as loose rock unless it was the kind of hard-pan that could not be plowed. He construed the phrase "which can not be plowed" as qualifying "hard-pan." The court very properly held the true meaning to be that all hard-pan was to be classified as loose rock, and that the words "which can not be plowed" related only to the "other material" than the substances specifically named. The decision, therefore, was that it was competent for the contractors to impeach the finding of the engineer by showing that it was influenced by a mistake occasioned, not by his misinterpretation of an engineering term or the name of a material, but by his failure to apply a correct rule of syntax. The Missouri court recognized this distinction, saying:

"It was the province of the engineer to say what was hard-pan, and how much hard-pan there was excavated, but he was bound to classify hard-pan as loose rock, and had no right to decline to so grade it because

it could be moved with a ten-inch plow and six-mule team." (112 Mo. 494.)

The case of *Lewis v. Chicago, S. F. & C. Ry. Co.*, 49 Fed. 708, arose upon a contract precisely like that passed upon in the Williams case. The court said:

"If it appears that the engineer in charge put a wrong construction on any provision of the contract the court will correct any substantial errors resulting from such mistake, for the reason that the parties did not make the decision of the engineer as to the proper interpretation of the contract final and conclusive. It is the province of the court to construe the agreement. *Bridge Co. v. City of St. Louis*, 43 Fed. Rep. 768, 10 L. R. A. 826.

"But in determining the kind of material found in the several cuts the engineers were called upon to exercise their judgment. That was a matter, as the contract in substance recites, which involved the exercise of special skill and attention as the work progressed, and for that reason the parties selected an umpire, by whose judgment they agreed to be bound. (*Ranger v. The Great Western Railway Company*, 1 Ry. & Can. Cas. [Eng.] 1; 13 Sim. [Eng.] *368.) The court will not undertake to revise the decision of the engineer on questions of that character if it appears that he acted in good faith. The utmost it can do is to correct errors of classification that may have resulted from an erroneous interpretation of the contract." (Page 710.)

The case of *Burke v. Mayor*, 7 N. Y. Supr. Ct., App. Div. 128, 40 N. Y. Supp. 81, presents another instance in which it was held proper to submit to the jury the question whether the action of the engineer had arisen from a misconstruction of the contract. There, however, the dispute was whether certain work performed by the contractor was within the terms of the contract, which made the engineer's report "conclusive as to the amount of materials furnished and work done." (Page 130.) The court said:

"It is not seriously claimed that the contractor did not do the work for which compensation is sought in this action. But it is claimed that it was without the terms of the contract; and it is upon this theory that

the engineer excluded the items representing such work in his final certificate. But if it should be found upon an examination of this contract that this work or any part of it was included within the terms of the contract, it seems to us that it would be a harsh rule to hold that because the engineer had acted upon a mistaken view of the law the contractor would be remediless. We do not think that any of the cases cited goes as far as that. It is undoubtedly true that where there is any dispute in regard to the work or its character the certificate is final, if honestly given. But where a contract calls for the performance of work which the contractor has done, and the engineer, upon an erroneous construction of the contract, has excluded it from his final certificate, it is clear that the contractor has a right to recover, notwithstanding the provisions of the contract in regard to the final certificate." (Page 130.)

The distinction between a misconception of the contract with respect to a question intended to be left to the engineer and one relating to a matter not of that character is plain. It is analogous to that recognized where the action of arbitrators is influenced by a mistake of law. Such a mistake is a ground of setting aside the award, where by the terms of the submission, whether contractual or statutory, the arbitrators are required to determine the rights of the parties according to the law, but not otherwise. (3 Cyc. 740.)

In *G., H. & S. A. Ry. Co. v. Henry & Dilley,* 65 Tex. 685, the court held that under a contract providing that the engineer should determine the quantity of work done his determination might be set aside if it were made by a method not authorized by the contract, saying: "If the contract provided that the appellees [the contractors] should be paid according to embankment measure, he [the engineer] would have no right to say that they should be paid by excavation measurement." (Page 692.) The decision was based upon the ground that while the meaning of the contract in this respect might have been submitted to the engineer it was not so submitted, and therefore the true construction was for the determination of the court. The distinction be-

tween that case and the one at bar is that, according to the conclusion already announced, the construction of the contract in the only respect in which a possible misconstruction is suggested was one of the matters covered by the submission.

In *Drhew v. Altoona*, 121 Pa. St. 401, 15 Atl. 636, the contract fixed the price for earth excavation at thirty-five cents per cubic yard, and for rock excavation at seventy-five cents. The engineer undertook to make a new classification, and in his estimate he described a part of the work as "loose rock excavation," for which he allowed fifty cents per cubic yard, allowing seventy-five cents only for what he termed "solid rock excavation." In that case what the engineer really decided was that the material under consideration was rock. He had of course no authority to vary the rate of compensation which the parties had agreed upon.

The error in submitting to the jury the question whether the engineer misconstrued the contract was especially prejudicial for the reason that we are unable to discover any evidence tending to show the existence of any other ground for setting aside his finding. If the jury had found upon sufficient evidence that the engineer acted in bad faith, and that his decision should therefore be disregarded, they would then have been required to determine for themselves as an independent fact whether the work on which the action was founded was rock excavation. Therefore it was appropriate for the court, if there was any evidence of such bad faith, to instruct them upon the force of the word "rock," as used in the contract, for their guidance in making that investigation, if it should become necessary. But any such instruction should have been limited to that purpose. Granting the instruction that shale or soapstone was rock to have been otherwise correct, it was likely to be understood as a rule binding upon the engineer as well as upon the jury, and was therefore misleading. The instruction relating to the test depending upon the

use of drills and blasting-powder was open to the same objection.

It is not necessary to pass upon the other specifications of error made by the city, for they relate to matters which may not again arise in the same form. The petition and answer might with advantage express more definitely the precise contentions made, but neither is fatally defective. It remains, however, to consider the cross-petition in error.

The second count—the *quantum meruit*—was evidently inserted by the plaintiffs in their petition upon the theory that as the contract provided for payment according to measurements made by the engineer, and as the engineer had not measured the excavation in controversy, they might not be able to recover upon the very terms of the instrument. The situation, however, was not that of one party preventing the full performance of a contract, thereby giving the other party the option to sue either for damages for the breach or for the reasonable value of the services actually rendered. (9 Cyc. 688.) Here there was full performance on the part of the plaintiffs. If they were in fact entitled to pay for the material in dispute as rock, the fact that the engineer had not measured it could not force them to abandon the contract or to accept payment at less than the agreed price per cubic yard. The only purpose of the measurement was to ascertain the amount of the material. If the engineer wrongfully refused to measure it the plaintiffs were at liberty to establish its amount in some other manner, and to rely upon the contract as fixing the basis of their compensation for removing it. (*Crane Elevator Co. v. Clark*, 80 Fed. 705, 26 C. C. A. 100; *City of Elizabeth v. Fitzgerald*, 114 Fed. 547, 52 C. C. A. 321; *Wyman v. Hooker*, 2 Cal. App. 36, 83 Pac. 79; *Chism v. Schipper*, 51 N. J. L. 1, 16 Atl. 316, 2 L. R. A. 544, 14 Am. St. Rep. 668.)

The judgment is reversed and the cause remanded, with directions that any further proceedings shall conform to the views herein expressed.