A. Z. SWISHER, *Appellee,* v. P. L. DUNN, *Appellant,* and
THE FIRST STATE BANK OF TRIBUNE, *Appellee.*

No. 18,121.

SYLLABUS BY THE COURT.

1. SALE—*Drug Store Conducted in Violation of Law—Contract
Enforceable.* A contract for the sale of a drug store, includ-
ing the stock and business, is not rendered unenforceable by the
fact that the business had at all times been conducted in viola-
tion of the law requiring the owner or some employee to be a
pharmacist or assistant pharmacist.

2. SALE—*Vendee in Default—Receiver May be Appointed.* In
an action by a vendor for the purchase price of a stock of
merchandise which the purchaser has refused to accept and
pay for according to his agreement, no error is committed in
the appointment of a receiver to take charge of and sell the
goods, that the proceeds may be applied upon the plaintiff's
claim.

3. APPRAISEMENT—*Drugs—Meaning of Phrase "At the Invoice
Purchase Price."* A contract for the appraisement of a stock
of merchandise "at the invoice purchase price" means that the
goods are to be appraised at what had been paid for them
when they were bought, not at what it would cost to buy
them from wholesalers at the time of the appraisement.

4. ARBITRATION—*Misapprehension of Duty—Award Set Aside.*
The award of arbitrators is not binding where it is the result
of a misapprehension on their part of the meaning of the
language used in defining the matter submitted to their
decision.

Appeal from Greeley district court.   Opinion filed
April 12, 1913.   Reversed.

*W. M. Glenn,* of Tribune, *Lee Monroe,* of Topeka, and
*W. S. Roark,* of Junction City, for the appellant.

The opinion of the court was delivered by

MASON, J.:   A. Z. Swisher and P. L. Dunn entered
into a written contract for the sale to Dunn of a drug
store owned by Swisher, "including the business of a

druggist," for a price to be determined by an invoice. Dunn refused to accept and pay for the property, and Swisher brought an action for the purchase price, asking that the stock be sold and the proceeds applied thereto. A receiver was appointed, who took charge of the stock, and upon order of the court sold it at public auction in bulk, Swisher being the purchaser. Swisher obtained judgment for the balance of the purchase price, and Dunn appeals.

The defendant in his answer, among other matters, asserted that the contract was unenforceable, for the reason that the good will of the business formed a substantial part of the consideration, and this had been built up by acts in violation of law, inasmuch as Swisher, although a physician, was not a pharmacist or assistant pharmacist, and at no time had either in his employ. The court held that these allegations stated no defense, and this ruling is complained of. The statute makes it a misdemeanor for any one not a pharmacist to conduct a drug store without employing a pharmacist or assistant pharmacist. (Gen. Stat. 1909, § 8095.) A physician is exempted only with respect to articles administered or supplied to his patients. (Gen. Stat. 1909, § 8104.) Under the allegations of the answer the contract price was larger than it otherwise would have been, because the value of the merchandise was increased by its being the stock of a going business, with an established trade, and this increase was due in part, at least, to acts done in violation of the criminal law. The defendant, in support of his contention, invokes a rule thus stated in Greenhood on Public Policy: "Any contract to pay money in consideration of something whose existence is due to a violation of law is void." (p. 538.) We do not think this rule always applies where the existence of the thing in question is due to a violation of law, only in the sense that incidentally some law was violated in its production, when it might have been created without such vio-

lation. For instance, we think the owner of an article might make a valid contract for its sale, although it was produced in whole or in part by labor which was illegal because performed on Sunday. The objection here made is much the same as though the purchaser had refused to comply with his agreement because the custom of the business had been increased by sales made in violation of the law forbidding goods to be sold on Sunday. We regard the present case as distinguishable from any of those cited in support of the defendant's position. Perhaps that most nearly in point is *Milton v. Haden*, 32 Ala. 30, 70 Am. Dec. 523, holding that one who had established a public ferry, without obtaining a license which the law required, could not recover on a note given for the rent of it for a year. There, however, the maintenance of the ferry by the lessee would seem to have been unlawful, so that he acquired no legal right under the lease. Here the past delinquency of Swisher imposed no restraint upon Dunn in the conduct of the business. While not closely in point, the questions decided in the following cases have some slight analogy to that here involved: *Rahter v. First Nat. Bank of Lancaster*, 92 Pa. St. 393; *Wyman v. Wentworth*, (Maine) 10 Atl. 454, not officially reported. The answer also included the allegation that the plaintiff's former violation of the law rendered the good will of the business less valuable than the defendant rightfully supposed it to be. We think this is not a sufficient ground for avoiding the contract. The suggestion is made that Swisher could not lawfully sell the stock of goods to Dunn, because it included medicines and poisons. The provisions of the statute regulating the sale of medicines and poisons are expressly limited to sales at retail. (Gen. Stat. 1909, §§ 8095, 8105.) The ruling of the trial court on this phase of the case is approved.

Another ground assigned by the defendant for his refusal to carry out the contract was that the plain-

tiff had misrepresented the age and consequent quality of the goods. It is urged that this defense should be taken as established because supported by the undisputed evidence. The credibility of the witnesses was a matter for the consideration of the jury, and the verdict must be regarded as conclusive, the issue having been submitted under proper instructions. A deposition was rejected bearing upon the condition of a part of the stock some years before, but as this was not shown to refer to any of the goods still on hand the rejection was not error. Evidence of the extent of depreciation of goods caused by lapse of time was stricken out, but the ruling does not seem seriously prejudicial.

It appeared from the testimony of Swisher that there was a small chattel mortgage against the stock. There could have been no difficulty in adjusting that if the contract had been carried out. In view of the course taken the defendant was not prejudiced. Complaint is made of the appointment of the receiver. If the defendant without sufficient reason refused to accept and pay for the goods, the plaintiff had a right to sell them and apply the proceeds on the agreed price. (35 Cyc. 520.) The action was essentially one by a creditor to subject his debtor's property to the payment of his claim. The appointment of a receiver was a step reasonably calculated to protect the interest of the defendant as well as that of the plaintiff, by insuring a fair sale, and there is nothing to suggest that its effect was otherwise than beneficial.

The contract of sale provided that the stock should be appraised by two persons (Swisher being one of them) "at the invoice purchase price of all goods, with the cost of transportation added." Swisher testified that a part of the goods were appraised at the current wholesale market price, which in some instances had greatly increased since he had purchased them. This necessarily worked an injustice to Dunn. The "in-

voice purchase price" referred to in the contract meant the price at which the goods were bought by Swisher, not the price at which new goods of a similar kind could be purchased at the time of the sale to Dunn. The award of the appraisers, made in good faith, was binding upon the parties with respect to matters submitted to their judgment. But they were selected to appraise the value of the goods, not to interpret the written contract. An award of arbitrators which is the result of a mistaken view of the meaning of the language in which the terms of the submission are expressed is not binding. Cases supporting that principle are cited in *Atchison v. Rackliffe,* 78 Kan. 320, 325, 96 Pac. 477. The appraisers of course intended and were required to make their decision according to the proper meaning of the written contract of submission. Its true meaning was a matter of law. They were mistaken as to what its meaning was. This was in a sense a mistake of law, but amounted in this situation to a mistake of fact, such as to vitiate the award. (3 Cyc. 740, 741; 5 Enc. L. & P. 232.) The record does not show the amount by which the appraisement was increased by this mistake, and therefore a new trial is necessary. The abstract seems to show that the receiver applied $199.65 of the amount received from the sale of the goods to the payment of a personal debt of Swisher. No explanation of this error has been offered, the plaintiff making no appearance in this court, and none is apparent. It should of course be corrected upon a new trial.

The judgment is reversed and a new trial ordered.