No. 2️⃣31.

M. H. GRAFF, revived in the Names of DAISY D. HOLBROOK, JENNIE B. SMITH and URIE COMPTON, as Sole Surviving Heirs of M. H. GRAFF, Deceased, *Appellees,* v. THE NATIONAL LIBERTY INSURANCE COMPANY, *Appellant,* and MARY E. BAKER, *Appellee.*

SYLLABUS BY THE COURT.

1. FIRE INSURANCE—*Appraisers Chosen—Partial Appraisement—Not Binding on Assured.* An appraisement made under a policy of fire insurance to ascertain the amount of damage to the property caused by fire is not binding on the assured where the appraisers failed to ascertain the damage to all the property covered by the policy and described in the contract submitting the matter to them.

2. SAME—*Construction of Policy.* Applying the principle that "contracts of insurance are to be construed, where construction is permissible, most strongly against the insurer and in favor of the insured" (*Insurance Co. v. Milling Co.,* 69 Kan. 114, 76 Pac. 423), to the words "only while occupied as a dwelling house," contained in a fire insurance policy, it is held that liability under the policy attaches to a building described therein that is used as a dwelling house although the building is also used "as an ice cream parlor in a meager way."

3. SAME—*Company Estopped by Its Answer and Tender of Payment— Waiver.* The right to avoid a policy of fire insurance, on account of alleged discrimination in the rate at which the insurance was written or on account of the use made of a part of the building insured, is waived by an offer to pay and a tender of the amount of a fire loss ascertained by appraisers appointed by contract between the insured and the insurer, and by an answer pleading that appraisement and offer to pay and tender of payment as a defense in an action by the insured on the policy, and by a tender of that amount into court for the use and benefit of the insured.

Appeal from Atchison district court; WILLIAM A. JACKSON, judge. Opinion filed November 6, 1920. Affirmed.

*W. P. Waggener, J. M. Challis,* and *W. E. Brown,* all of Atchison, for the appellant.

*C. J. Conlon,* and *C. D. Walker,* both of Atchison, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The appellees recovered judgment against the National Liberty Insurance Company on a policy of fire insurance. The insurance company appeals. It wrote a policy

of insurance for $1,200 on "a one and one-half story, shingled roof, frame building and additions thereto adjoining and communicating only while occupied as a dwelling house," known and described as 1118 North Seventh street, Atchison, Kan. The premium paid was $8.40 for a three-year policy, a rate of 70 cents on each $100 for that period. That was the rate on residence property. The rate on business property was much higher. The policy provided that—

"No agent of this company has authority to grant insurance under this policy upon any property other than dwellings and their contents, out-buildings and their contents, private stables or barns or their contents located in and adjacent to cities and villages and is expressly agreed that this policy shall be void if it purport to be insurance upon any other property or class of property."

It seems that the policy, in case of fire, also provided that appraisers should be appointed to ascertain the amount of loss, if the parties to the policy could not agree concerning that amount.

The building, or buildings, at the place described consisted of a one and one-half story dwelling house and of a one-story addition thereto used as a dwelling house and as an ice-cream parlor. A fire occurred, and both the dwelling house and the addition thereto were damaged. Each, at the time of the fire, was occupied as a dwelling house and had been so occupied for a number of years prior thereto. A written agreement that certain parties should estimate the loss was entered into. That agreement read:

"This agreement, made and entered into by and between M. H. Graff of the first part, and the insurance company or companies, whose name or names are signed hereto, of the second part.

"Witnesseth, That Ira C. Hammond and Frank D. Pelletier shall appraise and estimate the loss upon the property damaged and destroyed by the fire of February 12, 1918, as specified below: *Provided,* That the said appraisers shall first select a competent and disinterested umpire, who shall act with them in matters of difference only. The award of said appraisers, or any two of them, made in writing, in accordance with this agreement, shall be binding upon both parties to this agreement. It is expressly understood that this agreement and appraisement is for the purpose of ascertaining and fixing the amount of sound value and loss and damage only, to the property hereinafter described, and shall not determine, waive, nor invalidate any other right or rights of either party to this agreement.

"The property on which the loss or damage is to be determined is as follows, to wit: $1,200.00, on 1½ story shingle roof frame building, and on additions thereto, adjoining and communicating, only while occupied as a dwelling house, etc. . . .

"It is further expressly understood and agreed that in determining the loss or damage upon the property hereinbefore mentioned, the said appraisers are to make an estimate of the actual cash cost of replacing or repairing the same, or the actual cash value thereof, at and immediately preceding the time of the fire; and in case of depreciation of the property from use, age, condition, location or otherwise, a proper deduction shall be made therefor."

In the appraisement under that contract the damage to the dwelling house was placed at $205.50. No appraisement was made of the damage to the addition. The insurance company offered to pay the amount fixed by the appraisers, tendered that amount to the plaintiff, and refused to pay more. This action was then commenced by M. H. Graff, who recovered judgment against the insurance company for $650 in addition to the sum awarded by the appraisers, a total judgment of $855.50. Judgment was also rendered in her favor for $100 attorney's fee. On account of a mortgage clause attached to the policy, judgment was rendered for $498.25 in favor of defendant Mary E. Baker, who held a mortgage on the property. Special questions were answered by the jury as follows:

"Q. 1. Was the one and a half story shingle roof frame dwelling at 1118 North Seventh street occupied as a dwelling house only, at the time of the fire? A. Yes.

"Q. 2. Was the one-story building or portion of building at 1118 North Seventh street used as a dwelling house, and in addition thereto, used as an ice cream parlor or restaurant, where the tenant sold ice cream, pies, cakes, and fish? A. Yes.

"Q. 3. Was the one and a half story dwelling house adjoining to the one story building or portion of building above referred to? A. Yes.

"Q. 4. If you answer question No. 3 'Yes,' then state how such buildings adjoined? A. Permanently and securely attached.

"Q. 5. Did the one and a half story dwelling house communicate with the one story or restaurant portion of the building involved in this controversy? A. Yes.

"Q. 6. If you answer question No. 5 'Yes,' then state how and by what means the two buildings communicated? A. By doorway.

"Q. 7. Did the appraisers in making the award in this case, visit the premises and there see the one and a half story dwelling house and the one story store-building or restaurant, and upon a view of the premises and examination of the policy and the contract of submission to arbi-

trators, decline and refuse to make any award covering the restaurant portion of said building?  A.  Yes.

"Q. 9.  If you answer question No. 2 'Yes,' or in the affirmative, then state whether under the evidence and instructions you find that it was used as a dwelling house only?  A.  As an ice cream parlor in a meager way."

After judgment was rendered M. H. Graff died, and the judgment was revived in the name of Daisy D. Holbrook, Jennie B. Smith, and Urie Compton, sole surviving heirs of M. H. Graff.

1. The insurance company argues that the decision of the appraisers fixing the damage was final and conclusive on all the parties to this action.  The plaintiffs seek to avoid the effect of the appraisement by arguing that it was not binding because the appraisers misunderstood the terms of the policy and of the contract for appraisement and did not appraise the loss to or damage sustained by the addition to the dwelling house, and because M. H. Graff had no notice of the meeting of the appraisers.  The insurance company responds that the question of notice was not presented by the pleadings nor by the evidence, and is now raised for the first time.  M. H. Graff testified, "I was not present when the arbitration and determination of the amount of loss under the policy was had.  The arbitrator was here and back out of town before I knew it."

The policy and the agreement to appraise the loss covered the one and one-half story frame dwelling house and additions thereto.  A careful reading of the evidence abstracted does not show more than one addition to the dwelling house.  The loss to the addition was not appraised.  The language of the policy and of the contract of appraisement included the addition.  From the evidence abstracted the jury was warranted in finding that the one and one-half story building adjoined the one-story addition.  A contrary finding could not well have been made under the evidence, although the means of communication between the addition and the main part of the building had been nailed up for a while previous to the fire.  Each part of the building had for some time been occupied as a residence by a family, and while so occupied the door communicating between the two parts had been nailed up.  The defendant pleaded that the policy would be void if it were construed to cover the addition to the dwelling house for the reason that it was used

as a business property. If this allegation in the answer were true, it might have avoided the policy; but that fact did not justify the appraisers in omitting to appraise the damage to the addition.

In *Edwards v. Hartshorn,* 72 Kan. 19, 82 Pac. 520, a case that arose over a final estimate made by an engineer on construction work where the contract provided that his estimate should be final, this was said:

"Of course, if there were fraud, gross mistake, or the failure to exercise an honest judgment by the umpire, his estimate or award would not be binding." (p. 24.)

The discussion in *Atchison v. Rackliffe,* 78 Kan. 320, 96 Pac. 477, supports the rule declared in *Edwards v. Hartshorn.* The following was said in *Swisher v. Dunn,* 89 Kan. 412, 131 Pac. 571:

"The award of arbitrators is not binding where it is the result of a misapprehension on their part of the meaning of the language used in defining the matter submitted to their decision." (Syl. ¶ 4.)

Each side has cited and quoted from Corpus Juris; we quote one paragraph from that work:

"A party may, even at common law, set up, in defense to an action on an award, any matter which shows that the arbitrator has not pursued his authority, either in not determining some matter brought before him which he ought to determine, or in determining some matter which he had no authority to determine. The ground on which these cases stand is, not that the award is bad for misbehavior of the arbitrator, but that there is no award within the terms of the submission." (5 C. J. 193.)

This rule was followed in *Clark v. Goit,* 1 Kan. App. 345, 41 Pac. 214, where this language was used:

"In defense of an action on an award, or for not performing an award, the defendant may avail himself of any material error or defect apparent upon the face of the award, such as excess of power by the arbitrators, or defect of execution of power, as by omitting to consider a matter submitted." (Syl.)

The defendant argues this question as though the contract for the appraisement of the loss were a submission to arbitration of the whole controversy between the plaintiff and the defendant. The contract does not bear that interpretation. By it the appraisers were to estimate the loss or damage on the dwelling house and on the addition to it.

The contract contained the words "only while occupied as a

dwelling house." These words appear to have been copied from the policy. It does not appear from the contract that it was intended by the parties thereto to submit to the appraisers the power to determine whether the property was occupied as a dwelling house or not. On its face the contract submitted to the appraiser but one question—the loss or damage to the dwelling house and to the additions thereto.

*Chandos and another v. American Fire Ins. Co. of Philadelphia,* 84 Wis. 184, is cited by the defendant. The first paragraph of the syllabus reads:

"The decision of arbitrators or appraisers chosen pursuant to an insurance policy to determine the amount of a loss, as to what particular articles or items of property are embraced within the general description of the property insured, is final and conclusive."

In that case the insured made a schedule of the insured property as claimed by him, but omitted to describe part of it. The part omitted was not appraised. In the present case all the property was described, but the appraisers did not ascertain the damage to all of it. The plaintiff had no opportunity to call the attention of the appraisers to the mistake being made by them, as the appraisement was made without notice to her of the time of making it, and was completed before she knew anything about it. The appraisement was not conclusive on the plaintiff.

2. The insurance company seeks to put an interpretation on the words "only while occupied as a dwelling house" that does not accord with their meaning. Written in other language these words would say that the policy covered the building "during the time it is occupied as a dwelling house." The meaning the company seeks to give to the words used is that the policy shall attach "while the building is occupied exclusively as a dwelling house." That is not the meaning of the language used.

"Contracts of insurance are to be construed, where construction is permissible, most strongly against the insurer and in favor of the insured." (*Insurance Co. v. Milling Co.,* 69 Kan. 114, syl. ¶ 1, 76 Pac. 423.)

This rule has been applied by this court in several instances. (*Fire Association v. Taylor,* 76 Kan. 392, 91 Pac. 1070; *Bank v. Insurance Co.,* 91 Kan. 18, 137 Pac. 78; *Packing Co. v. Insurance Co.,* 94 Kan. 630, 634, 146 Pac. 1175.)

The court has made a somewhat diligent search for cases that are in some degree parallel to the present one. In *Thomas v. Commercial Union Assur. Co.*, 162 Mass. 29; *Bowditch v. Norwich Union Fire Ins. Co.*, 193 Mass. 565; *Sarsfield v. The Metropolitan Insurance Co.*, 42 How. (N. Y.) 97, and *Dougherty v. Greenwich Ins. Co.*, 64 N. J. L. 716, the uses to which the buildings were put were primarily for business purposes, and the use of the buildings as dwellings was entirely secondary.

Applying to the language, "only while occupied as a dwelling house," the rule followed in this state, it must be held that the policy could not be avoided by the limited use of the one-story part of the building as an ice cream parlor.

3. Another proposition argued is that the court committed error in refusing to give certain requested instructions concerning the discrimination in rates in favor of the insured, if the policy be held to cover the entire property. The insurance company argues that section 5369 of the General Statutes of 1915 prohibits discrimination, and that the policy, if it covered the business property, was void for the reason that it insured that property for less than the regular rate. The company also argues that the policy was rendered void by reason of a part of the property being used for business purposes. The insurance company pleaded the appraisement, its offer to pay to the plaintiff the amount of damage that the appraisers fixed for the one and one-half story part of the property, and its tender of that amount to her; it tendered that sum into court for the benefit of the plaintiff, and asked that judgment be rendered in her favor for that amount. This brings the present action within the rule of *Wildey v. Sheppard*, 61 Kan. 351, 59 Pac. 651, where this court said:

"The contention that Sheppard voluntarily exposed himself to unnecessary danger and is therefore not entitled to recover, as well as some claims of a general nature which go to the right to recover anything, are not available to the company. In its answer it alleged that, after investigation by an agent and adjuster of the company, an offer was made to the plaintiff as a payment of his claim. The offer, with the averment of the same in the pleading, practically acknowledges a right of recovery in Sheppard, and leaves open for consideration only the question of the amount for which the company is liable." (p. 355.)

The company admitted its liability for $205.50. The offer to pay that amount was not an offer to compromise. The tender and the answer stated a direct liability for the loss to the one and one-half story part of the building, but it denied liability for the loss to the remainder of the building. If the policy could have been avoided as to part of the property, it could have been avoided as to the whole of it. If payment under the policy could have been avoided on account of the rate of insurance that had been paid, or on account of the use of part of the property, the admission of liability as to part of the property waived the right to avoid the policy on account of the rate of insurance and on account of the use of the property.

Other matters are presented. Some of them have their foundation in the things that have been discussed; the others do not seem to be of sufficient importance to warrant further discussion. They have been examined, and no reversible error is found in them.

The judgment is affirmed.