No. 27,619.

The Kansas Wheat Growers Association, *Appellant*, v. Harry L. Bridges, *Appellee*.

No. 27,620.

The Kansas Wheat Growers Association, *Appellant*, v. Fred Windhorst, *Appellee*.

(261 Pac. 570.)

SYLLABUS BY THE COURT.

Pleading—*Form and Allegations—Construction on Demurrer.* Following the rule that as against a general demurrer, a petition should be liberally construed where no motion has been filed asking that it be made more definite and certain, it is held that it was error for the court to sustain the demurrer to the petition, the material parts of which are set out in the opinion, without such a motion having been first filed and called to the attention of the court.

Appeals from Edwards district court; Roscoe H. Wilson, judge. Opinion filed December 10, 1927. Reversed.

*T. A. Noftzger, George W. Cox, W. J. Masemore, R. L. NeSmith,* all of Wichita, and *W. E. Broadie,* of Kinsley, for the appellant.

*Ray Campbell, J. Graham Campbell,* both of Wichita, and *A. L. Moffatt,* of Kinsley, for appellee H. L. Bridges; *A. L. Moffatt,* of Kinsley, for appellee Fred Windhorst.

The opinion of the court was delivered by

Marshall, J.: In each of these actions the plaintiff is seeking to recover from each of the defendants twenty-five cents a bushel for wheat sold by each of them in violation of contracts entered into by them with the plaintiff, and to enjoin each of the defendants from delivering any of the wheat grown by him to any party other than the plaintiff. Judgment was rendered in favor of each defendant on his demurrer to the petition of the plaintiff, who appeals in each case.

The question presented is, Did each of the petitions state a cause of action against the defendant named therein? The petitions are identical, on identical contracts; for that reason it is necessary to examine only one of them, the one in the action against H. L. Bridges. That petition alleged the incorporation of the plaintiff and

Agriculture, 2 C. J. p. 998 n. 31 new. Building and Construction Contracts, 9 C. J. p. 772 n. 27. Pleading, 31 Cyc. pp. 79 n. 4, 80 n. 5, 289 n. 61, 290 n. 69.

the signing of a contract by which the defendant agreed with others—

"To organize an association without capital stock, under the laws of the state of Kansas, for the purposes of promoting, fostering and encouraging the business of marketing wheat coöperatively; for reducing speculation in wheat; for stabilizing the wheat markets; for coöperatively and collectively handling the problems of wheat growers; and for other pertinent purposes."

The contract also provided that—

"(a) If by June 15, 1921, signature of wheat growers or persons eligible to membership covering at least 51 million bushels of the 1921 crop shall not have been secured for this agreement, the organization committee shall so notify every subscriber at his address noted below, prior to July 1, 1921, and cancel his signature and the agreement signed by him. It is agreed that when 20 million bushels of wheat has been signed by the membership to the organization committee the organization committee shall proceed to organize the state board of 21 directors for the purpose of conducting organization and propaganda work.

"(b) If signatures of the growers of 51 million bushels shall be secured by the said date, June 15, 1921, then this agreement shall be binding upon all of the subscribers in all of its terms and there shall be no right of withdrawal whatsoever. If the required signatures are secured by June 15, 1921, the contracts shall become effective at once, and the 1920 crop shall be handled in addition to the crops covered in the marketing agreement, upon notice by the association.

"(c) For all matters of production or signatures and for all statements of facts in connection herewith, the written statement of the organization committee, signed by its chairman, shall be absolutely conclusive, with or without notice to the subscriber."

A marketing agreement was also signed by which the defendant agreed to sell and deliver to the association all of the wheat produced by him during the years 1921, 1922, 1923, 1924 and 1925, with an exception not here necessary to notice further. Subsequently, the defendant signed an amendment to the marketing agreement which amendment contained the following provisions:

"Upon execution of contracts covering five million bushels of wheat of the 1921 crop, estimated, this agreement shall become effective and the organization committee shall proceed to organize the association.

"This agreement shall apply to any wheat of the 1920 or 1921 crop on hand, upon mailing notice of incorporation of the association, and free of lien; and any such wheat shall be marketed by the association in pools separate from the 1921 crop."

The allegations of the petition material for consideration at the present time are:

"It was further agreed, between the parties hereto in said contract, that for

all matters of production or signatures and for all statements of facts in connection with said contract that the written statement of the organization committee, signed by its chairman, should be absolutely conclusive with or without notice to the subscriber.

"It was decided in August, 1921, that the signatures of growers of wheat had been secured representing over five million bushels of wheat for the estimated production of the year 1921."

The defendant contends that the provision of the contract, which provides that concerning the signatures and statements of fact connected with the contract the written statement of the organization committee shall be absolutely conclusive, is void, because it is against public policy in that it attempted to deprive the courts of jurisdiction in matters of dispute between the parties to the contract where those parties have an absolute right to resort to the courts.

In *Edwards v. Hartshorn,* 72 Kan. 19, 82 Pac. 520, it was held that—

"A provision in a contract between a principal contractor and a subcontractor for the grading of a railroad that the work should be done under the supervision of the chief engineer of the former, who should make estimates as a basis for the payment of the work done, and that his decision as to all matters of dispute which arose between the parties should be final and conclusive, is valid; and the decision of such an umpire is *prima facie* conclusive upon matters submitted to, and fairly and honestly decided by, him.

"If there be fraud or mistake so great and palpable as to imply bad faith, or the umpire fail fairly and honestly to perform the function assigned to him, his decision will have no binding force." (Syl. ¶¶ 3, 4.)

To the same effect are *Atchison v. Rackliffe,* 78 Kan. 320, 96 Pac. 477; and *Wilson v. Drainage District,* 113 Kan. 82, 213 Pac. 635; 6 R. C. L. 962; and 9 C. J. 772.

It is not perceived wherein the agreement here under consideration differs from those mentioned in the authorities above cited. Each concerned controversies that might arise in the future and each agreed to abide by the decision of a named person. Here, the contract concerned matters that must arise in the future and about which there might be a controversy. It was necessary for some person to determine whether or not the contract had the required number of signatures before the organization could function. It was reasonable that the decision of this question be submitted by the signers of the contract to some person to be determined for them. That was what was done. The contract is not void. The determination of the committee named can be impeached for fraud or other sufficient reasons.

The defendant argues that the petition does not allege that the committee in a writing signed by its chairman determined that the contract had the requisite number of signatures. This allegation of the petition might very properly have been framed in different language, but what was alleged was sufficient as against the demurrer thereto. If a more specific allegation had been desired, a motion to make more definite and certain should have been filed and called to the attention of the court.

In *Balmer v. Long,* 104 Kan. 408, 179 Pac. 371, the court said:

"As against a general demurrer—no motion having been filed to make definite and certain—a petition should be liberally construed."

If the defendant desires to contest the fact that the contract had the required number of signatures, or if he desires to show that the conclusion of the committee was not reached in good faith, he can put either or both matters in issue by his answer and prove either one or both in defense. The petition stated a cause of action.

The judgment in each action is reversed.