## LEBLANC v. BEARD PAPER COMPANY.

1. ARBITRATION AND AWARD—STATUTES—UNANIMITY OF AWARD.
Under the arbitration statute it is not necessary that the award
be unanimous (3 Comp. Laws 1929, § 15394 *et seq.*, as
amended by Act No. 182, Pub. Acts 1941).

2. SAME—DEFINITE AND FINAL AWARD.
Where two actions at law and a suit in equity were submitted to
arbitrators and their award found the actions at law without
merit but that the charges made in the equity suit had been
proved, that defendant had converted "at least $25,000" of
corporate funds, that an exhaustive audit which the arbi-
trators did not make would show a larger diversion, and that
a receiver should be appointed for the corporation, the award
must be vacated because not definite and final and because
the arbitrators imperfectly executed their powers in that they
failed to show how much plaintiff was entitled to have (3
Comp. Laws 1929, § 15402).

3. SAME—EVIDENT MISCALCULATION.
In arbitrating claims made in equity suit wherein bill claimed
a misappropriation by individual defendant of $13,000 and
upwards of corporate funds, arbitrators found that specific
misappropriations of $13,093.43 were proved and that an
exhaustive audit which arbitrators had not had time to delve
into would disclose a larger diversion and awarded "at least
$25,000" without explaining definitely how the sum was
arrived at *held*, subject to be set aside where there was an
evident miscalculation by the arbitrators (3 Comp. Laws 1929,
§ 15403).

4. SAME—RECEIVERS.
The statute providing for arbitration proceedings does not permit
the appointment of a receiver or the continuation of pro-
tracted litigation (3 Comp. Laws 1929, § 15394 *et seq.*, as
amended by Act No. 182, Pub. Acts 1941).

5. Same—Computation of Award.

The award in statutory arbitration proceedings is very similar to that made in common-law arbitration with respect to certainty and computation of amount (3 Comp. Laws 1929, § 15394 *et seq.,* as amended by Act No. 182, Pub. Acts 1941).

6. Same—Computation of Amount—Reference to Records.

Where an award of arbitrators leaves the amount due from·one party to the other to be determined from an examination of certain records and such records are so incomplete that the amount awarded cannot be computed therefrom without the aid of other evidence, the award is void for uncertainty (3 Comp. Laws 1929, § 15394 *et seq.,* as amended by Act No. 182, Pub. Acts 1941).

7. Same—Ambiguous in Part.

An award that is so uncertain and ambiguous in some of its parts that it cannot be enforced is void *in toto,* although sufficiently definite in other respects; especially where it·was the intent of the parties that all differences existing between them with reference to the subject-matter of the submission should be determined by the arbitrators.

8. Corporations—Stockholder's Suit—Receivers.

Where one of two stockholders of corporation is able to substantiate claim that defendant stockholder by misrepresentations and misappropriations acquired a dominant interest and thereby deprived plaintiff of dividends from defendant corporation, theretofore conducted as a partnership, he would be entitled to appointment of a receiver in an equity suit.

9. Appeal and Error—Arbitration and Award—Remand.

Where a suit in equity was commenced in 1941 and two actions at law followed shortly thereafter, all of which matters were submitted to statutory arbitrators in November, 1942, an incomplete and indefinite award filed by the arbitrators nearly four years later, and it is probable little, if anything, could be accomplished by resubmission of the matters of difference to the arbitrators who failed to make a necessary audit of questioned transactions, suit is ordered remanded to permit the filing of a new bill by plaintiff stockholder.

10. Costs—Arbitration and Award—Remand—Equity.

No costs are awarded on appeal from order confirming award of arbitrators that was so uncertain in part as to render it void *in toto,* where matter is disposed of by order remanding suit for disposition in equity.

Appeal from Wayne; Chenot (James E.), J. Submitted January 16, 1948. (Docket No. 61, Calendar No. 43,952.) Decided April 5, 1948.

In the matter of the arbitration of differences between George A. LeBlanc, individually and as trustee for George Patrick LeBlanc, and Beard Paper Company and others. Motion by George A. LeBlanc for confirmation of award. Motion granted. Defendants appeal. Reversed and remanded with permission to file bill of complaint.

*Daniel P. Cassidy,* for plaintiff.

*Fischer, Brown, Sprague, Franklin & Ford* (*Leon R. Jones,* of counsel), for defendants.

Butzel, J. Because of the nature of the questions involved, it becomes necessary to set forth an unusually long statement of facts. Prior to November 6, 1939, George A. LeBlanc, appellee, was the owner of one half of the 1,000 shares of outstanding common stock of the Beard Paper Company, one of the appellants, and of 75 shares of its preferred stock. The common stock has a par value of $1 per share, and the preferred stock is $100 par value. The other 500 shares of common stock were owned by Donald E. Beard, Ruth M. Beard, his former wife, and other members of the Beard family. LeBlanc and Beard ran the corporation as if it were a partnership and made withdrawals for individual use without proper corporate action. Shortly prior to November 6, 1939, Beard represented to LeBlanc that if the corporation could interest one T. Kirk Hill of Los Angeles, California, allegedly a man of wealth and ability, in investing in the corporation, its financial condition would be strengthened and its

business enlarged. It was proposed that LeBlanc and Beard each sell half of their respective holdings of common stock to Hill. Appellee claims that it was also agreed that if such a transaction was entered into, Beard would reduce his salary from the corporation $100 per month and also pay an indebtedness which he owed for preferred stock within a year.

LeBlanc claims that it was on the strength of these representations and agreements that he sold 45 shares of his preferred stock and 251 shares of his common stock to Hill for par value. He also sold 7½ shares of the preferred stock to Ruth M. Beard, and one share of common stock to Marion F. Dudek, who became treasurer of the corporation. LeBlanc transferred the balance of his common stock, 248 shares, to himself as trustee for his son, George Patrick LeBlanc, a minor. The book value of the common stock is not disclosed in the record.

Beard and members of his family also transferred 251 shares of common stock to Hill, and one share to Paul Dainty, who later became vice-president and then president of the company. Following these various transfers, the names of the stockholders and their holdings of common stock in the corporation were as follows: T. Kirk Hill, 502 shares; George A. LeBlanc in trust for George P. LeBlanc, 248 shares; Donald E. Beard, 10 shares; Ruth M. Beard, 238 shares; Paul Dainty, 1 share; Marion F. Dudek, 1 share.

On October 16, 1940, after holding the stock for slightly less than a year, Hill transferred his 502 shares of common stock and 45 shares of preferred stock, all of which stock had a par value of $5,002, to Ruth M. Beard. In an affidavit, Marion F. Dudek

stated that shortly before and after this transfer, Donald E. Beard borrowed sums aggregating $5,000 from the corporation, but that these loans, together with interest thereon, were repaid by Beard from time to time, the last payment having been made on June 24, 1943.

LeBlanc claims that the entire Hill transaction was nothing more than a maneuver by Beard to enable him and his family to become holders of more than 75 per cent. of the common stock and thus obtain absolute control of the corporation to the exclusion of LeBlanc's interest. This claim is fortified by two letters written by Beard to LeBlanc. In the first letter, dated December 22, 1939, Beard said:

"We must admit, George, that you and I have taken thousands of dollars out of the company to promote our various other enterprises and investments, which should have stayed in the company as working capital. All this is over and we might as well realize it, right down to the smallest detail."

The other letter, dated January 31, 1941, is quite persuasive of Beard's purposes. He said in it:

"I made up my mind that before 1939 was over that your voice in the affairs of the corporation would be very much in a minority.

"Now then, George, you might as well make up your mind to a few things. There is never going to be a salary for you and there is not ever going to be any division of profits to the common stockholders."

On May 5, 1941, LeBlanc, as plaintiff, filed a bill in the Wayne circuit court in chancery against the corporation, Donald E. Beard, then president, Ruth M. Beard, chairman of the board and director, Paul Dainty, vice-president and director, Marion F. Dudek, treasurer and director, and Doris Willert,

secretary and director. In his bill he set forth the various stock transfers, and alleged that Hill never participated in the activities of the corporation, nor was his connection of any benefit whatsoever to the corporation or its stockholders. He further alleged that the corporate management thus came under the complete domination of Donald E. Beard who thus was able to carry out his preconceived plan to deprive plaintiff of both past and future dividends; that were it not for such action plaintiff would have received $2,000 and upwards in dividends, and, also, dividends in the future which would aggregate many thousands of dollars. He further alleged that notwithstanding Beard's promise that he would reduce his salary $100 per month in order to induce LeBlanc to sell to Hill, as a matter of fact he increased his salary and drew $4,193.43 more than he was entitled to.

He further alleged that Beard appropriated for himself large sums for traveling and entertaining under the guise of spending it for the corporation. He further charged that during 1943, Beard withdrew from the corporation the sum of $6,900, and, in order to give such withdrawal the semblance of legitimacy, he directed the board of directors to pass a resolution authorizing loans to him up to and not to exceed $7,000.

He further charged that Beard in, the manner aforesaid, appropriated sums aggregating upwards of $13,000, which amount should be returned to the corporation for distribution to the stockholders. He alleged that because of the action of all of the directors in permitting such withdrawals they also should be held individually and jointly liable for Beard's misappropriations; and further, because as a result of the legal proceedings instituted by him

for the return of such moneys misappropriated, the condition of the corporation will be bettered, and he should be allowed his costs and expenses.

We have only given the gist of the charges in the bill of complaint, which prays for an accounting and the return to the corporation of all sums misappropriated, costs and attorneys' fees, and the appointment of a receiver to receive and collect all assets belonging to the corporation, including those recovered because of the misappropriations. It asks that the receiver be given the usual powers and authority of a receiver. It does not directly ask for the return of the stock transferred by LeBlanc to Hill and obtained from the latter by Beard or his former wife with the moneys borrowed by Beard from the corporation, which, according to the treasurer, were repaid with interest. Following a motion to quash on the ground that LeBlanc had transferred his stock to himself as trustee for George Patrick LeBlanc and was no longer interested, it was stipulated that the name of plaintiff be corrected and amended to read ''George A. LeBlanc in trust for George Patrick LeBlanc.'' An answer was filed denying the charges of misappropriation and the defendants expressly denied that they participated in any transaction which they did not honestly believe to be for the best interests of the corporation.

On the day defendants' answer was filed, the corporation instituted a suit at law against LeBlanc to recover $2,000 because of LeBlanc's alleged failure to keep up fire insurance on corporate property, by reason of which the company suffered a $2,000 fire loss which was not covered by insurance. An additional suit at law was brought by the corporation to recover $470.02 alleged to have been misappropriated by LeBlanc. In the latter case, recovery for the amount claimed was had before a justice of

the peace for the city of Wyandotte. An appeal from this judgment was taken to the circuit court for the county of Wayne by LeBlanc.

Thus, there were two law suits and one chancery suit pending when the parties agreed to submit all their controversies to arbitration under the statute (3 Comp. Laws 1929, § 15394 *et seq.,* as amended by Act No. 182, Pub. Acts 1941 (Comp. Laws Supp. 1945, § 15394, Stat. Ann. 1943. Rev. § 27.2483 *et seq.*). The arbitration agreement was entered into on November 5, 1942. It sets forth the fact that three suits were pending between the parties, and it was agreed that the controversies involved therein were to be arbitrated in accordance with the statute above cited, and that a judgment or decree should be rendered in the Wayne circuit court on any award made. Unfortunately, instead of selecting impartial arbitrators, the respective attorneys for the parties were appointed to act in that capacity. They selected a Mr. Hosie to act as a third arbitrator. The three suits were discontinued by stipulation of the parties.

After a period of approximately four years had elapsed, an award was made and signed by Hosie and LeBlanc's attorney and arbitrator. It was not signed by the arbitrator who at that time was attorney for Beard, *et al.,* appellants, but it is not necessary under the statute that the award be unanimous.

The award held that there was no merit in either of the suits at law brought by the corporation, but that the charges made in LeBlanc's equity suit had been proved. The allegation in the bill of complaint that Beard had received $4,193.43 in salary and bonuses more than he was entitled to was found to have been proved. Respecting the allegation that Beard had appropriated unto himself sums of money from the corporation for traveling and entertain-

ment expenses which were not expended by him for such purposes, the arbitrators said:

"It cannot be disputed that Beard used and operated the corporation as if it were his own private business and undeniably he paid little attention to whether items for entertainment and traveling were for the benefit of the corporation or for himself, personally. It would require an exhaustive audit to discover the extent of the diversion of corporation funds involved in said items, which audit the arbitrators have not the time to delve into."

The arbitrators upheld LeBlanc's claims that Beard had withdrawn $6,900 and upwards from the corporation during 1940 to which he was not entitled and that Beard had compelled the board of directors to pass a resolution authorizing loans to be made to him in amounts not to exceed $7,000. They also found that LeBlanc had proved the general allegation in the bill that by appropriating sums of money in the form of excessive salaries, bonuses, traveling and entertainment expenses, customers' commissions, and loans, the defendants had taken from and deprived the corporation of sums of money aggregating $13,000 and upwards. The award concluded as follows:

"The proofs show that at least $25,000 of the corporate (although we believe an exhaustive audit would show a larger diversion) funds and property were so converted, and except for the consummation of the above mentioned preconceived plan of said Beard, LeBlanc and he would have continued to be equal owners of said business, therefore one-half of the total of funds and property so converted should belong to said LeBlanc.

"A receiver should be appointed for the corporation by the proper court and this decision and award confirmed and judgment entered by said court in accordance with this decision and award."

The decision and award of the arbitrators, pursuant to the arbitration agreement, was filed in the circuit court for the county of Wayne in chancery and a motion was made to confirm the award. A motion to vacate the award was thereupon filed by the Beard interests, and the motions came on for hearing. After long arguments and the filing of various affidavits by interested parties, the trial judge stated that he would confirm the award. He also stated that he entertained some doubt as to his right to appoint a receiver in an arbitration proceeding under the statute, but in order that the entire matter could be presented to this Court, in the event of an appeal, he would appoint a receiver and fix his bond. He stated that the receiver was to qualify but not to act until the final decision by this Court.

It developed in the arguments and in an affidavit that the Beard Paper Company is now out of business, having sold out through the action of the stockholders after the Beard interests acquired the Hill stock.

We shall only pass upon a few of the many questions raised on appeal. The award must be vacated because it is not definite or final, and the arbitrators imperfectly executed their powers. The arbitration statute provides:

"Sec. 9. Any party complaining of such award, may move the court designated in such submission, to vacate the same, upon either of the following grounds:   *   *   *

"4. That the arbitrators exceeded their powers, or that they so imperfectly executed them, that a mutual, final and definite award on the subject matter submitted was not made." (3 Comp. Laws 1929, § 15402 [Stat. Ann. 1943 Rev. § 27.2491].)

"Sec. 10. Any party to such submission, may also move the court designated therein to modify or correct such award, in the following cases:

"1. Where there is an evident miscalculation of figures, or an evident mistake in the description of any person, thing or property referred to in such award." (3 Comp. Laws 1929, § 15403 [Stat. Ann. § 27.2492].)

There has been an evident miscalculation of figures. In the bill of complaint a misappropriation of $13,000 and upwards was charged, and in the decision and award of the arbitrators specific misappropriations totalling $13,093.43 were found proved. It was noted in the award that further misappropriations, for traveling and entertainment expenses, were made, the amount of which could only be determined by an exhaustive audit, "which audit the arbitrators have not the time to delve into." The amount of the award is for "at least $25,000," but nowhere in it is there a statement which, with any degree of definiteness, explains how the sum was arrived at. The award states that the true amount cannot be arrived at without an audit, which audit the arbitrators did not make. This would indicate that the amount of the award was arrived at through conjecture. Unfortunately, no record was kept of the testimony at the hearings conducted by the arbitrators, nor was this necessary, so that we are unable to refer to it to determine how the total amount of the award was arrived at. But even were we to hold that the amount of the award is sufficiently definite and correct, there is a more serious question. There is no way to determine from the award how much of it plaintiff is entitled to, or even that he is entitled to anything under it except by way of dividends. If the award is for corporate funds misappropriated by Beard, then it would seem proper that the amount of the award should be paid to the corporation and used to pay creditors, if there

are any, and then to pay dividends to stockholders. The award said:

"Obviously, the moneys and property diverted by the actions of Beard and the directors dominated by him belonged to the corporation and its stockholders and should be returned *to the rightful owners.*" (Italics ours.)

It then went on to state that except for the consummation of Beard's preconceived plan, "LeBlanc and he would have continued to be equal owners of said business, therefore one-half of the total of funds and property so converted should belong to said LeBlanc." But there is no finding that one-half of the Hill stock should be returned to LeBlanc, or what, if anything, he must pay to reacquire it. LeBlanc is the owner of record of only about 25 per cent. of the stock of the corporation. Such a stock holding would not entitle him to half of the funds and property misappropriated.

An affidavit of defendant Dainty states that he and all the other directors were under the complete domination of Beard; that on one occasion he was handed $740 by Beard with instructions to deposit it in his (Dainty's) bank account and at the same time was ordered to sign a check in the same amount drawn on his bank payable to Beard and/or his wife, whereupon he was handed a certificate for 740 shares of Beard Paper Company stock issued in his name and was ordered to sign a blank assignment on the reverse side. The affidavit states that Beard drew corporate funds to pay taxes on property not belonging to the corporation; that Beard stated in a letter that this was to be done "regardless of who likes it or who don't like it, these are my definite orders;" that Beard dictated the list of officers in ad-

vance of the meetings, ordered that the minutes of the meetings be sent to him for examination and correction before being entered in the minute book, and even did this at one time although he was out of town when the meeting was held.

All these facts, including Beard's letter of January 31, 1941, from which we quoted, indicates that Beard did have the preconceived plan of obtaining complete control of the corporation and did make illegal withdrawals of funds. The difficulty arises, however, from the fact that the award is indefinite and completely lacks finality. This fact is again illustrated by the record where the arbitrator for appellee, who was also his attorney, stated in argument:

"Now to say that there is a definite judgment for $25,000 or any other sum would be contrary to the award.  *  *  *  During the war we have been informed,  *  *  *  that great profits were made  *  *  *  and only a receiver can determine that.

"I will say this, that the liability of Beard and the others in this matter may run considerably more than $25,000 or even $30,000  *  *  *  and I do not think this court nor I can say that the ultimate liability of the corporation and Beard and the rest of them to LeBlanc is only a definite sum. We do not know what it is. We want the receiver to find it out. And when all these manipulations are gone into by the receiver who takes possession of the books and records, then we can find out what it is."

The award leads the parties right back to the courts which they sought to avoid through arbitration proceedings. We find nothing whatsoever in the statutory arbitration proceedings that permits the appointment of a receiver and the continuation of protracted litigation. The trial judge expressed

some doubt as to his right to appoint a receiver, and only appointed one so that this Court could pass upon the question. There is no reason why a proper audit could not have been made by the arbitrators. The award attempts to pass on to the court, acting through a receiver, the duty to order an audit and thus consider the very questions that should have been decided by the arbitrators. The award necessitates further court proceedings.

It is true that in affirming an award and entering judgment, the court has power to enforce the conditions of the award by ordering the transfer of certain assets, et cetera, but there is no provision whatsoever for the appointment of a receiver with the duty to make an audit, et cetera. The statutory award in arbitration proceedings is very similar to that made in a common-law arbitration. We believe that the case of *Mather* v. *Day,* 106 Mich. 371, applies. In that case, we stated (quoting syllabus):

"Where an award of arbitrators leaves the amount due from one party to the other to be determined from an examination of certain books of account, and such accounts are so incomplete that the amount awarded cannot be computed therefrom without the aid of other evidence, the award is void for uncertainty."

"An award that is so uncertain and ambiguous in some of its parts that it cannot be enforced is void *in toto,* although sufficiently definite in other respects; and especially is this so in a case where it was the intent of the parties that all differences existing between them with reference to the subject-matter of the submission should be determined by the arbitrators."

We are much impressed by the charges made by appellee as shown by the present record, and if they

are true, he should be entitled to the appointment of a receiver in an equity suit. See *Miner* v. *Belle Isle Ice Co.,* 93 Mich. 97 (17 L. R. A. 412).

The award must be vacated, and the order of the circuit court reversed. We do not believe that much, if anything, can be accomplished by resubmission of the questions to the arbitrators. The only way of properly disposing of the many questions involved with finality is in a suit in equity. The present proceedings were begun on the equity side of the court. The same subject-matter and the same parties would be involved in an equity suit, in which the appellee would be the plaintiff and the appellants would be the defendants. It is, therefore, ordered that, without bringing a new action, the appellee may file a bill of complaint against the appellants within 30 days from the time that this decree is handed down, and that appellants may have 15 days in which to answer. It is recommended that the case be set for immediate hearing. If plaintiff deems it advisable, on proper motion he may add additional parties defendant.

An order will be entered in accordance with this opinion, but without costs.

BUSHNELL, C. J., and SHARPE, REID, DETHMERS, and CARR, JJ., concurred with BUTZEL, J. BOYLES and NORTH, JJ., concurred in the result.