## Metal Products Workers Union Local 1645, UAW-CIO *v*. The Torrington Company

Superior Court  Tolland County  File No. 6626

Memorandum filed April 7, 1955.

*Margaret C. Driscoll,* of Bridgeport, for the plaintiff.

*Maguire & Cole,* of Stamford, for the defendant.

SHAPIRO, J. The plaintiff union has addressed an application to this court to vacate an award made by an arbitrator, while the defendant company counterclaims for confirmation of the award.

The facts in the case disclose that the union and the company, under the terms of the collective bargaining contract, agreed to arbitrate the propriety of the discharge by the company of an employee, one Charles Baccei. The arbitrator determined that the discharge of Baccei was not justified and he was restored to his job. It was determined, and its correctness is not disputed by either party, that Baccei's lost earnings due him over the period of his layoff amounted to $1428.93. He was then paid by the company the cash sum of $636.93, the difference of $792 having been deducted from his total earnings of $1428.93 on the claim that the sum of $792 had already been received by Baccei, although in the form of unemployment compensation benefits paid him during his period of layoff. A grievance setting forth that the company was in violation of article 12, § 6 of the contract was filed by the union on November 1, 1954, and processed through to arbitration. The arbitrator chosen by the parties under the terms of the collective bargaining agreement found that the company had "properly deducted $792.00 from the back pay awarded Mr. Charles Baccei in a previous arbitration case."

Briefly stated, it is the union's claim that the arbitrator exceeded his powers in interpreting the contract in a manner contrary to law in that he determined that the provisions of article 12, § 6, were ambiguous when in fact they were clear and definite and required no interpretation for the determination of their obvious meaning; further that he added to the provisions of the contract in that his interpreta-

tion added the words, "less any unemployment compensation received" to the provisions of said article and section; further, that in basing his decision on "logic, equity and past practice", he exceeded his powers in that he did not interpret the contract in accordance with the law but in accordance with the said logic, equity, and past practice; and further that the logic and equity which he cites require that the interpretation be just the contrary of the one which he made. Also, stated briefly, it is the company's position that under the law the arbitrator neither exceeded his powers nor imperfectly executed them.

Article 12, § 6, in the contract, reads as follows: "An employee found to be unjustly laid off or discharged without proper cause shall be reinstated on his former job and receive compensation for time lost at his regular rate of pay." The real question to be determined by the court is whether said section of said article is ambiguous so as to permit the arbitrator, in interpreting the same, to consider factors other than the bald language of that section, or whether said section is clear and definite and required no interpretation for determination of its meaning.

It is elementary that the charter of an arbitrator is the submission and no matter outside of the submission may be included in the award. *Pratt, Read & Co.* v. *United Furniture Workers,* 136 Conn. 205, 208. Indeed, the basic test of the validity of an award lies in its conformity to the submission. *Chase Brass & Copper Co.* v. *Chase Brass & Copper Workers Union,* 139 Conn. 591, 594. The submission or issue agreed upon in the case at bar was "whether or not the Company properly deducted $792.00 from the back pay awarded Mr. Charles Baccei in a previous arbitration case." The award of the arbitrator was that "[t]he company properly deducted $792.00 from the back pay awarded Mr.

Charles Baccei in a previous arbitration case." On its face, the award, with its categorical answer to the question propounded, would appear to be in the strictest conformity with the submission.

The union attacks the award along the lines stated earlier, however, upon the obvious theory that the arbitrator's opinion, accompanying the award, demonstrates error upon which he reached his conclusion. Ordinarily, the memorandum of an arbitrator is irrelevant. *In re Curtis-Castle Arbitration*, 64 Conn. 501, 513; *Chase Brass & Copper Co.* v. *Chase Brass & Copper Workers Union*, supra, 597. It is the award, rather than the finding and conclusions of fact, that controls. *United States Time Corporation* v. *Waterbury Watch Workers Union*, 15 Conn. Sup. 391, 395. However, assuming the right to examine the arbitrator's discussion, the court finds that he gave what he construed to be his reasonable interpretation of the language in article 12, § 6; that he also had before him for consideration article 14, § 6, and article 5, § 3, of the contract; that he had before him two other awards, the facts, backgrounds and relevancy of which he considered in relation to the case at hand.

In interpreting any contract we must seek the intent of the parties expressed therein. In ascertainment of that intent, "the motives of the parties and the ends which they sought to accomplish by their contract are relevant." *Colonial Discount Co.* v. *Avon Motors, Inc.*, 137 Conn. 196, 200. In the case of *Matter of American Eagle Fire Ins. Co.* v. *New Jersey Ins. Co.*, 240 N.Y. 398, 408, it was held in part that "[T]he salutary purpose of an arbitration is the summary and extrajudicial settlement of controversies between parties. The court should pause before permitting a technical and strained construction of the law or the agreement of the parties to defeat that purpose. . . . Laws should be construed

sensibly and plain purposes should not be defeated by narrow interpretations."

"Compensation" is defined in Black's Law Dictionary (4th Ed.), page 354, as follows: "Indemnification; payment of damages; making amends; making whole; giving an equivalent or substitute of equal value; that which is necessary to restore an injured party to his former position; consideration or price of a privilege purchased; equivalent in money for a loss sustained; equivalent given for property taken or for an injury done to another; giving back an equivalent in either money which is but the measure of value, or in actual value otherwise conferred; recompense in value; recompense or reward for some loss, injury, or service, especially when it is given by statute; remuneration for the injury directly and proximately caused by a breach of contract or duty; remuneration or satisfaction for injury or damage of every description; that return which is given for something else. An act which a court orders to be done, or money which a court or other tribunal orders to be paid, by a person whose acts or omissions have caused loss or injury to another, in order that thereby the person damnified may receive equal value for his loss, or be made whole in respect to his injury." As an example Black quotes from the case of *Stutsman* v. *Des Moines City Ry. Co.,* 180 Iowa 524, as follows: " 'Compensation' is a misleading term, and is used merely for lack of a word more nearly expressing the thought of the law which permits recovery for an imponderable and intangible thing for which there is no money equivalent."

Other courts have referred to the meaning of "compensation" as follows: " 'Compensation,' accurately used, means payment in money, or other benefit, which will compensate in the strict sense, that is, make even, or be measurably the equivalent of that for which it is given." *Teders* v. *Rothermel,*

205 Minn. 470 "[T]he word 'compensation' connotes equivalency, that is to say, a payment which *adequately* remunerates, makes amends for a wrong done or pays for a service rendered." *Kerstetter* v. *Elfman,* 327 Pa. 17, 21.

The union argues also that should Mr. Baccei become unemployed again within the same benefit year, he will not be able to receive any unemployment compensation because the amount received previously has exhausted his benefits. The record before the court does not show when Mr. Baccei's benefit year began or ended. Neither does it show whether his benefit year ended before the time of the hearing in this court or before the date of arbitration.

The union further argues that Mr. Baccei's unemployment compensation rate in the future will be adversely affected. The court does not understand the law to work that way. Neither unemployment compensation or damages paid to an employee for breach of contract may be treated as wages under the Connecticut unemployment compensation law. The amount allowed to Mr. Baccei, namely $1428.93, was allowed as lost earnings due him over the period of his layoff, and the fact that this sum was made up by the arbitrator of $636.93 in cash and $792.00 in unemployment compensation payments does not affect his basic pay figure ($1428.93), which forms the income basis for that period as required for determining his future unemployment benefits. It should be made clear that unemployment benefit payments, as such, are not construed as earnings or wages, but in the instant case there can be no question but that the amount of $1428.93 forms the basic pay figure for the purpose aforesaid.

Since the interpretation of the contract is for the court, it is the function of the court here to decide whether the interpretation made by the arbitrator

is a correct one under the rules of law. *Chase Brass & Copper Co.* v. *Chase Brass & Copper Workers Union,* 139 Conn. 591.

In a recent decision by *Comley, J.,* in the case of *Imperial Laundry, Inc.* v. *Cleaners, Dyers & Laundry Workers Union, Local 364, C.I.O.,* 25 Labor Cases 86, 146, decided in the New Haven Superior Court on March 31, 1954, the court, in dealing with the improper discharge of employees and the awarding of unemployment compensation, held that the employees were entitled to unemployment compensation. It held further that such compensation as they might receive should be deducted from the back pay to which they were entitled.

After a review of the authorities and helpful memoranda submitted by counsel, the court concludes that, in making his award, the arbitrator was acting within his powers in interpreting the contract as he did, and that, in executing them, he properly considered those factors which he brought into his deliberations.

It is, therefore, adjudged that the arbitrator's interpretation is a correct one and that the award made by him be, and is hereby, affirmed.