## No. 40,631

THE COLEMAN COMPANY, INC., a corporation, *Appellee*, v. THE INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW-CIO), and its Unit, LOCAL No. 570, Affiliated with American Federation of Labor-Congress of Industrial Organizations, an unincorporated Labor Organization or Association; M. R. LEE, Individually, and as Area Director of the UAW for the region including Wichita, Kansas; E. L. ANDERSON, Individually, and as President of Local No. 570; and all other members, agents and representatives of said Labor Organization whose names are unknown to Plaintiff, and, therefore, cannot be given as individuals and representatives of said Labor Organizations, *Appellants*.

(317 P. 2d 831)

Opinion filed November 9, 1957.

*Harry C. Clark,* of Kansas City, Missouri, and *Fred A. Beaty,* of Wichita, argued the cause, and *Sidney J. Brick, Yale W. Gifford* and *W. A. Bonwell, Jr.,* all of Wichita, were with them on the briefs for appellants.

*John F. Eberhardt,* of Wichita, argued the cause, and *George B. Powers, Carl T. Smith, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Anthony T. Dealy* and *Gerald Sawatzky,* all of Wichita, were with him on the briefs for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an equitable action brought by The Coleman Company, Inc., to set aside an arbitration award made in favor of The International Union, United Automobile, Aircraft and Agricultural Implement Workers of America (UAW-CIO), and others, hereafter collectively referred to as the Union.

On the 9th day of May, 1955, Coleman and the Union entered into a collective bargaining agreement, hereafter referred to as the Agreement, which provided among other things that a grievance not satisfactorily settled under any one of the four preliminary steps outlined, could be appealed by the Union to arbitration. It provided that the decision of the majority of the Board, consisting of three members selected in accordance with the terms of the Agreement, shall be final and binding on both parties to the Agreement.

The Agreement specifies the limitation of the Arbitration Board's powers as follows:

"The function of the Arbitration Board shall be to interpret the provisions of this Agreement and to resolve by decision or to make recommendations concerning any appeals arising thereunder. This Board shall have *no power to add or subtract from, or to modify, extend or delete any of the terms of this Agreement,* or any agreement made supplementary hereto except by mutual consent of the Company and the Union." (Article V, Section 8.) (Emphasis added.)

A dispute arose between Coleman and the Union as to the interpretation of Article XV, Section 8(b), of the Agreement. It provides:

"Whenever a temporary breakdown or trouble occurs with equipment, machines, jigs, fixtures or material, or when any other circumstance beyond the operator's control causes *unusual delay* to a *bonus operation* which has not been compensated for in the standard and the employee thinks that a *special allowance* should be made for such delay, he shall promptly notify his supervisor at the time such trouble occurs. The supervisor shall, with the co-operation of the Methods and Standards Department (if desired), estimate the amount of time being lost and *shall make a special allowance at the base rate of the job* to the employee for the time lost." (Emphasis added.)

After extended preliminary procedures the parties were unable to settle their dispute and the matter was referred to a Board of Arbitration. Coleman objected to arbitration on the ground that a Board of Arbitration had no jurisdiction to determine the issue. The disputed Section 8(b) of the Agreement was, however, without litigation submitted to a Board of Arbitration. The sole issue submitted for determination was stipulated by the parties and reads as follows:

"Does Article XV, Section 8(b) permit the company to make *special allowances* to employees assigned to *bonus operations at the base rate of the job* for time lost whenever a temporary breakdown or trouble occurs with equipment, machines, jigs, fixtures or material, or when any other circumstance beyond the operator's control, such as scheduling of jobs, delay in receiving the next job, improper distribution of towmotor service, obtaining blueprints and obtaining instruction cards, causes *unusual delay to a bonus operator* which has not been compensated for in the standard." (Emphasis added.)

The Board of Arbitration after hearing considerable testimony in November, 1955, took its decision under advisement upon the transcript of the record and briefs which it requested the parties to submit. The Award dated the 22nd day of January, 1956, in answer to the question submitted by the parties reads as follows:

"Upon the basis of all of the evidence submitted, the Arbitration Board finds and therefore rules that the position and contention of the Union must

be sustained and that of the Company denied; that the language of Article XV, Section 8b, clearly permits and requires the Company to make special allowances as the term is understood by the Union and discussed in its brief; that if a matter of computation alone were involved, then the language used would seem to be ambiguous, if not meaningless. The Arbitration Board finds and rules that the intent of the parties is clearly expressed in the Union brief and its position as evidenced in the record. The Arbitration Board, therefore, has no alternative other than to sustain the Union contention and to deny the Company position. Ordered accordingly."

Coleman brought an equitable action in the district court to set the arbitration award aside. After full hearing the lower court ruled that the award made by the Board of Arbitration was invalid and could not be enforced. The court therefore entered judgment for Coleman, the effect of which was to set the award aside and declare it void. The reasons set forth in the court's opinion are paraphrased as follows:

(1) That Article XV, Section 8(b), of the contract does not need, require or lend itself to interpretation because it is so simple and clear that no extended examination or interpretation is required to determine its meaning.

(2) That the Award modifies and changes the Agreement in that Section 8(b), which states that ". . . the supervisor . . . shall make a special allowance at the base rate of the job to the employee for the time lost," is changed to read "The supervisor shall make a special allowance at the average bonus earnings of the employee for the time lost," and that had the signers of this Agreement intended to use the term "average bonus earnings," as used in other places throughout the Agreement, in Section 8(b) in lieu of the term "base rate" they would have done so.

(3) That the Board of Arbitration exceeded the authority granted to it in the Agreement, since its duty was to decide with definiteness and certainty the proposition submitted to it rather than to rewrite, change and add to the Agreement.

(4) That the Board of Arbitration did not state in its Award what average bonus earnings are or how they are to be computed and by reason thereof the Award is lacking for want of certainty.

Appeal was properly perfected by the Union to this court through procedures unnecessary to relate in detail, specifying as error questions suggested by the foregoing reasons assigned in the trial court's opinion.

Does a state court have jurisdiction of an action which challenges

an arbitration award? The appellants have suggested by a question in their brief that the federal courts have exclusive jurisdiction of suits such as the one at bar. This point has not been specified as error but is raised in appellants' brief. Chronologically, the question of jurisdiction is one to be advanced and disposed of before proceeding to other points.

Appellants rely upon *Garner v. Teamsters Union,* 346 U. S. 485, 74 S. Ct. 161, 98 L. Ed. 228; *Weber v. Anheuser-Busch, Inc.,* 348 U. S. 468, 75 S. Ct. 480, 99 L. Ed. 546; and *Guss v. Utah Labor Board,* 353 U. S. 1, 77 S. Ct. 598, 1 L. Ed. 2d 601, cases involving alleged unfair labor practices over which the National Labor Relations Board possessed exclusive jurisdiction. It is apparent on the surface that these cases have no application where the controversy involves an arbitration agreement with respect to which the National Labor Relations Board has no jurisdiction whatever. This is admitted by the appellants' statement of the question. The United States Supreme Court in *Textile Union v. Lincoln Mills,* 353 U. S. 448, 77 S. Ct. 912, 1 L. Ed. 2d 972, considered the legislative history of the Labor Management Relations Act, 1947, to support its holding that violations of arbitration clauses in collective bargaining contracts do not constitute "unfair labor practices" over which the National Labor Relations Board possesses jurisdiction, and that problems pertaining to the enforcement of arbitration agreements are for the courts, not the Board.

The cases of *Textile Union v. Lincoln Mills,* supra; *General Electric Co. v. Local 205,* 353 U. S. 547, 77 S. Ct. 921, 1 L. Ed. 2d 1028; and *Goodall-Sanford v. Textile Workers,* 353 U. S. 550, 77 S. Ct. 920, 1 L. Ed. 2d 1031, are all cases relating to controversies which involve arbitration agreements and relate solely to federal jurisdiction. In each of these cases a union filed suit in a federal district court seeking *specific performance* of an arbitration clause in a collective bargaining agreement, because of an employer's refusal to arbitrate. Each case held that under Section 301 of the Labor Management Relations Act, 1947 (29 U. S. C. A. § 185; 61 Stat. 156), a federal district court *has jurisdiction* to entertain such an action, and that the federal courts are not bound by state laws but may devise their own rules for enforcement of such agreements. However, none of these three decisions involves any question regarding whether *state* courts could or could not still exercise their traditional jurisdiction of enforcing "or refusing to enforce" volun-

tary agreements, and none of the three opinions holds or contains even a suggestion that state courts are deprived of concurrent jurisdiction in this field. In view of Section 301(a) of the Labor Management Relations Act, 1947, which provides that suits of this nature ". . . *may* be brought in any district court of the United States . . ." (Emphasis added), the foregoing decisions impliedly *recognize* the concurrent jurisdiction of state courts. This interpretation is fortified by a subsidiary point considered in *Textile Union v. Lincoln Mills*, supra, as to whether the federal courts should supply federal law to resolve these controversies or must turn to state law for answers to the questions, and is further fortified by remarks in the dissenting opinion.

The parties concede that Coleman's business affects interstate commerce. Thus, we are forced to a construction of the Federal Act in an effort to determine whether Congress has pre-empted this field. The only applicable section of the Labor Management Relations Act, 1947, is 301(a) and it uses the term "may" and not the term "shall" or "must" in authorization of suits in the district court of the United States.

In 14 Am. Jur., Courts, § 247, p. 441, a statement, amply supported by authorities, is made as follows:

". . . In regard to state courts the law is also said to be settled that courts of general jurisdiction therein have power to decide cases involving the rights of litigants under the Constitution or statutes of the United States unless deprived of the right so to do by the terms of the Federal Constitution or acts of Congress. . . ."

State courts have consistently exercised concurrent jurisdiction with the federal courts in matters involving enforcement of collective bargaining agreements. (*General Electric Co. v. Union*, 93 Ohio App. 139, 108 N. E. 2d 211 [appeal dismissed 158 O. S. 555, 110 N. E. 2d 424]; *Application of Pocketbook Workers Union*, 149 N. Y. S. 2d 56; *Phila. Mar. Assn. v. Longshoremen's Assn.*, 382 Pa. 326, 115 A. 2d 733 [certiorari denied 350 U. S. 843, 76 S. Ct. 84, 100 L. Ed. 751]; and *Gen. Bldg. Contrs' Assn. v. Local No. 542*, 370 Pa. 73, 87 A. 2d 250.)

The Union's position is untenable for a further reason. The present action is not one for violation of a contract within the meaning of Section 301(a) of the Labor Management Relations Act, 1947, but one which attacks the jurisdiction of the Arbitration Board to resolve the controversy. This is not treated at all in the

Labor Management Relations Act, 1947. Under such circumstances the federal district court's dismissal of a company's complaint was upheld by the Sixth Circuit Court of Appeals in *Mengel Co. v. Nashville Paper Prod. & Spec. Wkrs. Union,* 221 F. 2d 644, on the ground that the federal court had no jurisdiction. Furthermore, the Union filed a cross-petition in the lower court in the instant case seeking to recover judgment against Coleman for accrued wages allegedly due the employees under the Award made by the Arbitration Board. Such action is beyond the jurisdiction of the federal district courts. (*Employees v. Westinghouse Corp.,* 348 U. S. 437, 75 S. Ct. 489, 99 L. Ed. 510.)

We, therefore, hold that state courts have jurisdiction to entertain an action which seeks to challenge the validity of an arbitration award, even though the business affects interstate commerce.

The various questions raised by the parties necessitate a general approach to the law of arbitration. This will give perspective to a discussion of the factual situation in this case as the various contentions of the parties are treated.

Arbitration awards, which courts regard as valid and suitable for judicial enforcement, are neither contract nor judgment but partake of the nature of both. The award partakes of the nature of a contract because it is the result of a contract, the submission agreement, whereby the parties agree to comply with the award. It differs from a contract in that it is the act of the arbitrators, not of the parties themselves. It partakes of the nature of a judgment in that, if it is valid, it is binding upon them though imposed by an outside source.

The dual nature of the award serves to explain the limited grounds on which it may be successfully impeached. In general it may be said that the ground urged must be good, both for attack upon a judgment and for relief against the terms of a contract. But, certain grounds that would be sufficient in an appeal from a judgment would not be grounds for impeaching an award, for the reason that the contractual element is present in the award. Thus, the fact that the arbitrator made erroneous rulings during the hearing, or reached erroneous findings of fact from the evidence, is no ground for setting aside the award, because the parties have agreed that he should be the judge of the facts. Even his erroneous view of the law would be binding, for the parties have agreed to accept his view of the law. Were it otherwise in either of these cases, arbitration would

fail of its chief purpose; instead of being a substitute for litigation, it would merely be the beginning of litigation. Error of law renders the award void only when it would require the parties to commit a crime or otherwise to violate a positive mandate of the law. (Arbitration of Labor Disputes, Updegraff & McCoy, 1946.)

Judicial intervention is ill-suited to the special characteristics of the arbitration process in labor disputes. Dean Harry Shulman summarized his vast and extraordinarily successful experience as labor arbitrator as follows:

". . . The arbitration is an integral part of the system of self-government. And the system is designed to aid management in its quest for efficiency, to assist union leadership in its participation in the enterprise, and to secure justice for the employees. It is a means of making collective bargaining work and thus preserving private enterprise in a free government. When it works fairly well, it does not need the sanction of the law of contracts or the law of arbitration. It is only when the system breaks down completely that the courts' aid in these respects is invoked. But the courts cannot, by occasional sporadic decision, restore the parties' continuing relationship; and their intervention in such cases may seriously affect the going systems of self-government. When their autonomous system breaks down, might not the parties better be left to the usual methods for adjustment of labor disputes rather than to court actions on the contract or on the arbitration award? . . ." (Shulman, Reason, Contract, and Law in Labor Relations, 68 Harv. L. Rev. 999, 1024.)

Labor relations contracts providing for arbitration are for specific terms, generally much shorter than the time required for adjudication of a contested lawsuit through the available stages of trial and appeal. Re-negotiation of agreements cannot await the outcome of such litigation; nor can the parties' continuing relation await it. (See dissenting opinion of Justice Frankfurter in *Textile Union v. Lincoln Mills,* supra.)

It is stated in 3 Am. Jur., Arbitration and Award, § 130, p. 951:

"The award of arbitrators *acting within the scope of their authority* determines the rights of the parties as effectually as a judgment secured by regular legal procedure, and is as binding as a judgment *until it is regularly set aside or its validity questioned in a proper manner. . . .*" (Emphasis added.)

Relief will be granted against an award which the arbitrators had no jurisdiction to make. Thus, in the instant case we must inquire whether the Board of Arbitration has exceeded the limitation placed upon its contractually invested authority by the Agreement, since the parties to such an Agreement are bound by the arbitrators' award only to the extent and in the manner prescribed by the contract and only if the award is rendered in conformity thereto.

(*Flack-Beane Lumber Co. v. Bass*, 258 Ala. 225, 62 So. 2d 235; *Pub. Util. Constr. Workers, & v. Pub. Serv., & Co.*, 44 N. J. Super. 316, 130 A. 2d 421; *Drake v. Stein*, 116 C. A. 2d 779, 254 P. 2d 613; and *Couey v. Arrow Coach Lines*, 288 S. W. 2d 192 [Tex. Civ. App.].) This principle is expressly adopted by Section 10(d) of the United States Arbitration Act (9 U. S. C. A. § 10[d] and is supported in 6 C. J. S., Arbitration and Award, § 80, p. 219. (3 Am. Jur., Arbitration and Award, § 122, p. 944, § 123, p. 945, § 132, p. 955 and § 137, p. 961.)

The foregoing statement is consistent with Kansas law. In *Graff v. Insurance Co.*, 107 Kan. 648, 193 Pac. 356, this court said:

" 'A party may, even at common law, set up, in defense to an action on an award, any matter which shows that the arbitrator has not pursued his authority, either in not determining some matter brought before him which he ought to determine, *or in determining some matter which he had no authority to determine.* . . .'

"This rule was followed in *Clark v. Goit*, 1 Kan. App. 345, 41 Pac. 214, where this language was used:

" 'In defense of an action on an award, or for not performing an award, the defendant may avail himself of any material error or defect apparent upon the face of the award, *such as excess of power by the arbitrators,* . . .' " (p. 652.) (Emphasis added.)

We are primarily confronted in this case with the question whether an Agreement to arbitrate exists at all upon the grievance presented by the record. The appellee contends that the Award exceeded the arbitrators' jurisdiction since it attempted, under the guise of interpretation, to change and add to the unambiguous provisions of Article XV, Section 8 (b). Stated in other words, the appellee's position is that although the contract specified that the arbitrators had "no power to add or subtract from, or to modify, extend or delete any of the terms of this Agreement," the Board of Arbitration exceeded its jurisdiction when, under the guise of "interpretation," it amended the unambiguous "base rate" contractual provision to read "average bonus earnings." The question resolves into whether the Agreement on its face is clear and unambiguous, particularly as applied to Article XV, Section 8(b).

Primarily, the construction of a contract is a question of law for the courts. (*Oliver v. Nugen*, 180 Kan. 823, 308 P. 2d 132; *Bailey v. Talbert*, 179 Kan. 169, 294 P. 2d 220; *Maltby v. Sumner*, 169 Kan. 417, 219 P. 2d 395; and *Morgan v. Wheeler*, 150 Kan. 667, 95 P. 2d 320.)

In 3 Am. Jur., Arbitration and Award, § 132, p. 955, it is stated:

". . . Although, generally speaking, the award is conclusive on all matters of law and fact consonant with the submission, *this is true only in so far as such matters are decided according to the legal construction of the contract from which the arbitrators derive their authority,* and not merely according to such construction as they may choose to give to it, unless they are authorized by the submission to construe such language. Even then, *the extent of such authority under the contract is for the court, not the arbitrators, to determine."* (Emphasis added.)

The construction of a collective bargaining agreement to determine what questions the parties have agreed to submit to arbitration is a function of the court and not the arbitrators, and courts will not infer that it was the intention of the parties to empower the arbitrators to determine the extent of their own jurisdiction. (*Phila. Mar. Assn. v. Longshoremen's Assn.,* supra.)

We must, therefore, turn to the agreement to determine whether it is free from ambiguity as a matter of law. Ambiguity in a written instrument does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning. (*Oliver v. Nugen,* supra; and *Klema v. Soukup,* 175 Kan. 775, 267 P. 2d 501.) If application of pertinent rules of construction to the Agreement indicates that it is clear and unambiguous with respect to Article XV, Section 8(b), then the Board of Arbitration went beyond its authority to make an award. If, however, the construction indicates ambiguity, resort must then be made to extrinsic evidence to determine its meaning. In that event, the parties are bound by their agreement to submit the grievance to the Board of Arbitration which is empowered to interpret the Agreement, and they are bound by the award unless other valid objections exist. (*Miller v. Brumbaugh,* 7 Kan. 343; *Groat v. Pracht,* 31 Kan. 656, 3 Pac. 274; *Insurance Co. v. Payne,* 57 Kan. 291, 46 Pac. 315, and *Atchison v. Rackliffe,* 78 Kan. 320, 96 Pac. 477.)

The appellee's (Coleman's) position is simply that the term "base rate" is an unambiguous, clearly defined term, with a meaning entirely different from "bonus earnings" or "straight time hourly earnings." It argues that the parties were free to contract as they chose. They specifically designated that the special allowance to a bonus worker for "down time" be made "at the base rate of the job" and not at some other rate determined by "bonus earnings" or "straight time hourly earnings." Appellee's argument is fortified by refer-

ence to other provisions in the contract which specifically designate the rate at which an employee is to be compensated. Section 8(a) of Article XV provides a condition under which a bonus employee shall receive "average straight time hourly earnings" (average bonus earnings). Section 8(a) of Article XV reads:

"Under the following condition, a bonus employee will be paid his average straight time hourly earnings, or his day rate whichever is greater, excluding shift premium. Average straight time hourly earnings shall be based on the employee's last two closed pay periods preceding the pay period in which the work is performed.

"(1) When a regular bonus operator is assigned to work on trial runs. . . ."

This argument so far as it goes has power of persuasion for under Article XV, Section 8, where the parties to the contract intended to provide bonus payments to employees, the contract so specified, and also specified a definite period to be used for the purpose of ascertaining "average earnings," whereas, when only "base rate" was intended, the contract utilized the words "base rate" and omitted any time basis for computing "average earnings." Against these provisions of the contract and the argument heretofore presented is the appellants' position.

It is argued that Article XV, Section 8(b), provides that when trouble occurs beyond the operator's control which causes *unusual delay* to a *bonus operation,* which has not been compensated for in the Standard (immaterial in this action), and the employee thinks that a *special allowance* should be made for such delay, a procedure is designated for making a *special allowance* to the employee for the time lost. It is contended that the use of the words "special allowance" for unusual delays to an employee engaged in a *bonus* operation renders the contract ambiguous because a "special allowance" means something over and above the base rate for a bonus employee. This argument is fortified by Sections 6 and 7 of Article XV. Section 6 provides for bonus earnings as follows:

"All bonus standards will be established so that the average operator working at a normal pace (100%) will earn the base rate of the job. For each 1% increase in units produced above the standard, the employee will receive 1% increase in base pay with a normal incentive expectancy of 25% over the base rate of the job, however such 25% shall not be construed as a guarantee or a limitation of incentive earnings. Only acceptable pieces shall be counted in determining the number of pieces produced under a standard. Acceptable pieces shall include those substandard pieces which an operator is authorized by his Foreman to produce and which is due to conditions of the machine or

material beyond the control of the operator. There shall be no charge against an employee because of any spoiled pieces."

Section 7 provides a guarantee as follows:

"(a) *A bonus employee will be guaranteed the base rate of his classification.* Bonus earned on one job will not be used to supplement subsequent earnings on other jobs where the employee, through no fault of his own, fails to make his base rate. In all cases when an employee experiences trouble he will notify supervision at the time the trouble occurs.

"(b) The Company shall not for part of a day remove a bonus operator from his regular type of work for assignment to another type of work or to rework parts which he has not spoiled when he could have otherwise continued at his regular type of work and assign another employee with less seniority in place of the regular bonus operator. If a grievance is filed claiming a violation of this section and it is determined that such transfer was contrary to the provisions of this section, he shall be paid not less than his average straight time hourly earnings for the preceding two pay periods prior to such transfer, while temporarily so assigned by the Company." (Emphasis added.)

The guarantee in Section 7 gives to the bonus employee the base rate of pay for his job classification. With this guarantee it is argued that Section 8(b) of Article XV is unnecessary and superfluous if it provides only for payment at the base rate for "down time" since he would be paid at the base rate without this provision for "down time."

It is apparent that this argument is capable of persuasion equally with the argument of appellee. We, therefore, conclude that the contract on its face, construed as a whole, is ambiguous as to the provisions of Article XV, Section 8(b). Reasonable minds could differ as to how this section was intended by the parties to apply. Under these circumstances, the Board of Arbitration had jurisdiction to interpret the provisions of Article XV, Section 8(b) by resort to extrinsic evidence in an effort to determine the controversy.

Other reasons advanced by appellee in explanation of the terms in the controverted section of the contract have been fully considered but are insufficient to remove doubt as to the intended meaning, viewed strictly upon the wording of the contract.

The parties having agreed to be bound by a submission to arbitration under the terms of the Agreement are in no position to complain of the award. The general rule is that errors of law and fact, or an erroneous decision of matters submitted to the judgment of the arbitrators, are insufficient to invalidate an award fairly and honestly made. Nothing in the award relative to the merits of the controversy as submitted, even though incorrectly decided, is ground

for setting aside an award in the absence of fraud, misconduct or other valid objections. (*Insurance Co. v. Payne,* supra; *Miller v. Brumbaugh,* supra; and 3 Am. Jur., Arbitration and Award, § 135, p. 958.)

Other cases in which interpretation of an ambiguous section of a collective bargaining agreement was submitted to arbitration and the award upheld are *Westinghouse Air Brake Co. Appeal,* 166 Pa. Superior Ct. 91, 70 A. 2d 681; *Kingston Coal Co. v. Glen Alden Coal Co.,* 312 Pa. 546, 168 A. 677; and *In re Genuth,* 137 N. Y. L. J. 6, 31 Labor Cases 93,201, ¶ 70,459. Cases in which awards have been vitiated on the ground that an arbitrator may not modify or add to the contract are *Matter of Western Union Tel. Co. (ACA),* 299 N. Y. 177, 86 N. E. 2d 162; *Chase Brass & Copper Co. v. Chase Brass & Copper Workers Union,* 139 Conn. 591, 96 A. 2d 209; and *Stenzor v. Leon,* 130 C. A. 2d 729, 279 P. 2d 802.

Are there other valid objections to the award?

Appellee, in an effort to sustain the ruling of the lower court, contends that although the award made by the Board of Arbitration purported to allow "average bonus earnings" in lieu of "base rate" wages as unequivocally specified in the contract, it was indefinite and fatally defective by failing to designate any period of time over which the employees' "average bonus earnings" should be computed.

It is stated in 3 Am. Jur., Arbitration and Award, § 125, p. 947:

"The certainty of an award is one of its indispensable and essential properties; if deficient in this respect, it cannot be sustained. It must be complete and definite. It must leave open no loophole for future dispute and litigation."

Numerous cases are cited by appellee in support of the foregoing proposition. (*In re E. A. Laboratories, Inc.,* 50 N. Y. S. 2d 222; *LeBlanc v. Beard Paper Co.,* 320 Mich. 632, 32 N. W. 2d 73, 78; *Baldwin v. Moses,* 319 Mass. 401, 66 N. E. 2d 24; *Leo Benjamin, Inc., v. McPhail Candy Corporation,* 81 N. Y. S. 2d 547; and *Velveray Corp. v. Simon,* 130 N. Y. S. 2d 839.) But an award governing future conduct of parties to an arbitration cannot be set forth as specifically as an award for money due on an open account. If an award is so written that by giving the words used their ordinary meaning, including that which may be fairly inferred from language used, there is a reasonable certainty of a common intent. Awards are not required to be written with such critical nicety that a forced construction cannot discover a doubt. Every presumption is in favor of the validity of an award, and it will be construed so as to

put one consistent sense on all its terms. (*Millinery Co. v. Insurance Co.*, 160 N. C. 130, 75 S. E. 944; and 3 Am. Jur., Arbitration and Award, § 129, p. 950.)

The Union's brief is made a part of the award by reference. Furthermore, the document entitled "Award of Arbitration Board" sets forth the Union's brief in full. The last paragraph of the Arbitration Board's decision, immediately preceding its formal award, states that:

"We cannot arrive at any conclusion after carefully reviewing all of the evidence other than the following: That the evident intent of the parties and the language of the contract is to the effect that the supervisor shall make an allowance of time *in addition* to the actual delayed time, which shall be sufficient to allow the operator to maintain his bonus earnings."

Our inquiry is directed to what the award determined and whether the determination fully and conclusively answered the issue submitted. (6 C. J. S., Arbitration and Award, § 84, p. 231, and cases therein cited.)

Attention is directed to Article XV, Section 8(b), to determine, if possible, whether any award could be made more specific and definite than the provisions of this section of the contract permit. It provides that if the employee *thinks* a *special allowance should* be made he shall promptly notify his supervisor and *the supervisor shall*, with the co-operation of the Methods and Standards Department (if desired), *estimate* the amount of time being lost *and* shall make *a special* allowance at the base rate of the job to the employee *for the time lost*. One might ask how definite can an award be which is based upon the construction of a provision in the contract which calls for an *estimate* of time lost when an employee *thinks* it should be made.

Another objection to the award stated by the appellee is that although the issue submitted to the Arbitration Board asked only whether the company was, under the contract, permitted to pay employees for *lost time* "at the base rate of the job," the Board departed from this clear issue, and officiously rendered an award purporting to require compensation *for lost time* to be made upon the basis of the employees' "average bonus earnings."

It is clear that where the parties have stipulated that a specific issue be presented to a Board of Arbitration, the authority of the Board does not go beyond the issue submitted for arbitration. (*Swisher v. Dunn*, 89 Kan. 412, 131 Pac. 571; *Metal Products Work-*

*ers Union v. Torrington Co.*, 116 A. 2d 449; and *Local 63, Textile Workers Union v. Cheney Bros.*, 141 Conn. 606, 109 A. 2d 240.) The issue submitted merely paraphrases the provision of the Agreement which the Board is authorized to interpret. Appellee's objections will be answered together.

The proceedings before the Arbitration Board were informally conducted, no reporter was present to record the testimony, and affidavits were used. The Agreement for submission to arbitration not having provided otherwise, the manner in which the hearing was conducted was within the province of the Board. From statements in the document entitled "Award of Arbitration Board" it is found that evidence presented at the arbitration hearing disclosed Coleman under normal operations computed the payroll by leaving the hourly rate fixed (base rate) and computed bonus operations in terms of hours (time) rather than in terms of dollars. Witnesses testified that when payments in excess of actual "down time" were made, they were made in the form of extra hours, not in the form of an increase in base pay.

Resort to extrinsic evidence, which the Board had the power to do, thereby supplied a fact which the Board found was the determining factor. The important issue confronting the Board was the *method* by which *time lost* should be *estimated*. The only conclusion stated by the Board reads:

"Conclusion—The only reasonable interpretation of the intent of the contracting parties and the meaning of Section 8b is that the supervisor shall make an allowance of time in addition to the actual delay time sufficient to allow the operator to maintain his bonus earnings."

The appellee's contention, that the award is indefinite because it failed to designate any period of time over which the employees' "average bonus ernings" should be computed, lacks merit since this issue was not embraced in the stipulated issue submitted to the Arbitration Board by the parties.

By the Agreement the Union is bound to leave the *estimate* of time lost to the supervisor, with the co-operation of the Methods and Standards Department (if desired), all of which is at Coleman's direction. The award designates the *method* which shall be used in *estimating* time lost, and thereby permits the company to make a *special allowance* to employees assigned to bonus operations at the base rate of the job for the estimated time lost. The award

is consistent with the issue submitted and under all the facts and circumstances presented in this case it is definite and certain.

The judgment of the lower court is reversed and the case is re-manded for further proceedings consistent herewith.

PRICE, J., dissenting: The parties were free to contract as they chose, and in my opinion there is nothing ambiguous about the contract in question. It means just what it says in plain and un-mistakable language. For that reason I would affirm the judgment of the trial court.

FATZER, J., dissenting: I concur in the dissenting opinion of Justice Price, but I would add that the established rule of this jurisdiction is that the intention of the parties and the meaning of a contract are to be deduced from the instrument when its terms are plain and unambiguous (*Anderson v. Rexroad,* 175 Kan. 676, 679, 266 P. 2d 320). In my judgment there is nothing ambiguous in § 8 (b) of the subject collective bargaining agreement set forth in the majority opinion. It is evident the employer and the labor organization each intended to establish special allowances for employees assigned to bonus operations, but the unambiguous language of the contract expressly provided that those allowances would be made "at the base rate of the job." The award of the Arbitration Board purports to alter the express terms of the agreement; consequently, I would affirm the judgment.